(Decided May 10th 1866.)

---

The Mayor & City Council of Baltimore *vs.* Thomas Poultney & David B. Trimble.

Evidence: Assumpsit: Privity of Contract.—In assumpsit for goods bargained and sold, to establish a privity of contract and enable the plaintiff to charge the defendant, it must appear that the goods alleged to have been sold and delivered, were sold and delivered to the defendant, or to some person or persons duly authorized by the defendant to contract for it or in its behalf.

Code, Art. 4, Sec. 818: Board of Police of Baltimore City, powers of.—Upon a true construction of the Code of Public Local Laws, Art. 4, sec. 818, the Board of Police of Baltimore city have no power to have charged to the Mayor and City Council any claim not embraced in their estimate for each current fiscal year contemplated by said section.

Mayor & C. C. of Balto. vs. Poultney & Trimble.

ACT OF 1861, CH. 2.—UNDER THE ORDINANCE No. 22 OF 1861, OF THE MAYOR & CITY COUNCIL OF BALTIMORE, appropriating $500,000 for "the defence of the city," &c., approved by the Act of 1861, ch. 2, no claim was properly payable out of said fund unless recognized or sanctioned by the Mayor.

PRACTICE IN COURT OF APPEALS: PRAYERS AND INSTRUCTIONS TO THE JURY: ART. 5, SEC. 12, OF THE CODE AS AMENDED BY THE ACT OF 1862, CH. 154, ENACTS—"That the Court of Appeals shall in no case decide any point or question which does not appear, by the record, to have been tried and decided by the Court below; but no prayer or instruction shall be deemed defective by reason of any assumption therein of any fact by said Court, or because of a question of law having been thereby submitted to the jury unless it appears from the record that such objection was taken at the trial." HELD:

1st. That "the assumption of a fact by the Court" is materially different from giving instructions to the jury without any evidence to support them. To assume a fact is to state as proved, that which is to be proved; as, "if the jury find that after the sale," assumes the fact of the sale, and was therefore erroneous. But to instruct the jury upon an hypothesis of which there was no evidence, is to leave them to assume or find that for which there is no foundation.

2nd. That the errors, though closely similar, are by no means the same; the one is generally incidental and casual, the other is fundamental, deliberate and conclusive, and has always been held to be error for which the judgment would be reversed. The minor error was intended to be cured by the amended Act, but the greater was not included.

IMPLIED AGENCY: CODE, ART. 4, SECS. 806, 821 & 822.—The Board of Police are declared by law to be a constituted authority of the city of Baltimore, to the same effect as if created and appointed by the Mayor and City Council; they, or a majority of them, constitute a quorum; they are required to have a common seal, to appoint a treasurer, to keep a full journal of all their proceedings, and cause their receipts and disbursements of money to be faithfully kept and entered in books provided for that purpose; and they are authorized and required to issue certificates for their indebtedness which are made receivable for taxes, provided their certificates shall not exceed their estimated expenses more than $30,000 in one year. HELD:

That all these provisions indicate that, like other corporations, they must act through some authorized agent having the authority of a majority of the Board.

APPEAL from the Superior Court of Baltimore city:

This was an action of *assumpsit* by the appellees against the appellants, for goods sold and delivered. Plea, *non assumpsit* and issue.

*Exception.* At the trial of this cause the plaintiffs, to maintain the issue on their part joined, proved by competent testimony, that during the year 1861 and before, and ever since, they were the proprietors and occupants of a house No. ——, Baltimore street, in the city of Baltimore, in which they carried on business as partners, under the name of Poultney and Trimble, and there kept for sale, and sold guns, pistols and other arms of various kinds, and ammunition, flasks, &c., and that on Sunday, the 21st day of April, 1861, their said store was broken into by a crowd of persons who had there assembled, and guns, pistols, and other articles were taken and carried away by persons connected with said crowd, to the amount of $——; that afterwards, on the same day, the Police of Baltimore city took charge of their said store, and kept possession thereof for the succeeding ten days, and protected it effectually from future like attacks.

The plaintiffs then proved by *J. D. Moritz*, a competent witness, that during said year of 1861, he was in the service of the said plaintiffs as clerk and salesman, and that the goods specified in the filed account were sold and delivered as hereinafter mentioned, at the prices specified, and were charged by the direction of the plaintiffs, or one of them, to the Mayor and City Council of Baltimore, amounting to the sum of $1,249.46; that the articles specified in said bill under date of April 25th, 1861, were selected by Grafton D. Spurrier, and were packed in boxes, and were subsequently called for by Wm. Key Howard and a squad of men, who were under his command, and the boxes were placed on a dray and carried away, but witness did not accompany the dray, and does not know whither the boxes were carried; that he saw the

dray go down Baltimore street, in a direction eastwardly; that the other goods mentioned in said account were not selected by said Spurrier, nor delivered on his order, but on the order of other persons; that he remembers that some were sold and delivered on the order of Wm. H. Norris, but witness cannot now specify; that the goods delivered to Wm. Key Howard were delivered on an order, but he does not know whose order it was.

The plaintiffs also proved by *Christian Freibacker*, a competent witness, that he was, in the year 1861, a clerk in the store of the plaintiffs, and that he superintended the packing of the goods selected by Spurrier, and that all said articles were packed in the boxes, which were delivered to Mr. Howard and the soldiers under him, and carried off on the dray; that afterwards a duplicate of the account offered in evidence by the plaintiffs was, by direction of the plaintiffs, carried by witness to the Head-Quarters of General Trimble, and there left; and that the witness did not see Spurrier there, and has no knowledge of the position then held by Trimble.

The plaintiffs also proved by *Peter Newell*, a competent witness, that he was one of the police in April, 1861, and was ordered to go to the store of the plaintiffs on Monday, the 22d April, 1861, and was there, off and on, for ten days, during which period the plaintiffs sold no goods without permission, and delivered none, except upon orders; that the witness was present when Mr. Howard and the guard of soldiers under his command came for and received the boxes of arms which had been packed in the plaintiffs' store; that Mr. Howard produced an order which the witness saw but did not read; that the boxes were carried off on a dray, and that Mr. Howard and his men went with the dray.

The plaintiffs further proved by *Henry A. Thompson*, a competent witness, that after the passage of said Ordinance, approved the 20th April, 1861, he was appointed by Mayor

Brown to disburse the money, authorised by said Ordinance to be raised for the defence of the city, and the said witness produced a printed report made by him, as to the money actually received and disbursed by him, and he paid over to the register the balance appearing to his debit. The said witness being asked whether, in signing his name as Quarter-Master General, he did so in virtue of any commission from the United States, or from the State of Maryland? He replied, that he did not; that said designation was not properly assumed, and that his duties were not precisely those of a Quarter-Master; that the witness knew Isaac R. Trimble, that he took the title of Major General and exercised a military authority in the city of Baltimore for about three weeks, commencing on the 20th April, 1861; that he had about ten aids, (that is who were called his aids,) William H. Norris, Grafton D. Spurrier, William Key Howard, Robert M. McLane and others who acted under him as his aids; that the witness understood that Trimble was appointed by the Police Commissioners, but had no personal knowledge whether he was or was not appointed, and that he saw Trimble once in company with Mayor Brown.

The plaintiffs also proved by *William W. Taylor*, a competent witness, that he was in April, 1861, the superintendent of the Western Maryland Railroad; that he came with the train on the morning of the Monday succeeding the 19th day of April, 1861, intending to run into the city as usual, and intending as usual to run out a train in the afternoon; that the train was stopped outside of the city, and the witness was informed that he would not be permitted to go out with the train in the evening; that the witness thereupon went to Mayor Brown in order to obtain permission for the cars to run, who referred him to the Police Commissioners, the last named in turn referring him to General Trimble, as the person who alone had the power to grant a pass for the

running of the cars; that the witness called on him at his Head-Quarters in the custom house,—he was in military dress, and his sword was buckled on ;—that after some hesitation he gave to the witness a permit for running the cars, but under very stringent restrictions, one restriction being that no troops were to be transported on the road.

The plaintiffs also proved by —— *Bates,* a competent witness, that he was a member of Police Force of Baltimore, in the month of April, 1861 ; that he saw Poultney and Trimble at the office of the Police Commissioners on the 22nd April, 1861, and afterwards saw boxes at the Commissioners' office with the name of Poultney and Trimble on them, but did not know what they contained.

The plaintiffs also proved by *James McLaughlin,* that in April, 1861, he was connected with the office of the Police Commissioners, and filled the situation of Clerk to the Marshal of Police, Col. Kane ; that in that capacity he received some boxes brought there by Wm. Key Howard and a body of men as guards ; and that the boxes were brought on a dray late in the afternoon, and witness gave Mr. Howard a receipt for them. The said witness also stated, that shortly afterwards, Col. Kenly, as Provost Marshal, took possession of the office of the Police Commissioners, and witness saw persons go up stairs and come down with arms and carry them away.

It was admitted by the defendant that the Police Commissioners had not increased the number of policemen beyond the ordinary number of men who were in the employment of the city previously. Whereupon the plaintiffs, by their counsel, prayed the Court to instruct the jury as follows:

1. If the jury shall find from the evidence in the case, that the plaintiffs, as partners, doing business under the firm of Poultney and Trimble, sold and delivered the several articles of merchandise as stated by the witness, Mr. Moritz, between

the 22d day of April, 1861, and the first day of May, 1861, and that they were sold and delivered on the orders and by the authority of Isaac R. Trimble; and shall further find that said Isaac R. Trimble, by appointment of the Police Commissioners of the City of Baltimore, and with the knowledge and consent of the Mayor of the City of Baltimore, and the other authorities was, during said time, in command of a body of men, whom the said Police Commissioners had raised as an additional force, in addition to the permanent Police Force of the city; and shall also find that in the judgment of the said Police Commissioners, the exigency of the times and the state and condition of affairs, demanded the raising, employment, equipping and arming of such additional force, in order to enable the said Commissioners to preserve the public peace, prevent crime, arrest offenders and to perform the other duties imposed on said Police Commissioners by law; and shall further find, that said Isaac R. Trimble, after his appointment, and whilst under employment and in command as aforesaid, was authorised by said Commissioners to purchase said articles on behalf of said Police Commissioners for the use of the City of Baltimore; and shall further find that said articles after they had been so purchased, were by direction of said Isaac R. Trimble sent to the office of the said Police Commissioners, and were there received and receipted for by the authorised agent of the said Police Commissioners, and that the plaintiffs in selling and delivering said articles had notice that the same were purchased for the use of the city of Baltimore; and shall also find that the same were sold and delivered on the credit of the defendant, and not on the personal credit of said Isaac R. Trimble, nor on the personal credit of the said Police Commissioners, and that the same were charged at the times of such sales and deliveries to the defendant as purchaser, then the defendant is liable in this action for the price of such articles of mer-

chandise as they may find from the evidence were sold and delivered as aforesaid.

2. Even if the jury shall not find from the evidence, that said Police Commissioners, before said articles were purchased by said Isaac R. Trimble, had given to him any authority to purchase said articles, but shall find all the other facts set forth as the hypothesis of the first prayer, and shall also find from the evidence, that said articles were delivered to, and accepted and received by said Police Commissioners, as the property of the defendant, and had notice that they had been purchased by the said Trimble on account, for the use and on the credit of the defendant, then the defendant is liable as stated in said first prayer.

And the defendants prayed the Court to instruct the jury as follows:

1. That the Police Commissioners had no power to bind the Mayor and City Council of Baltimore for the payment of the account for the recovery of which this action is brought, except in the mode specified in the act creating the Police Board, and that the said mode has not been pursued in this case.

2. That there is no authority conferred upon the Police Commissioners by law, either by specific grant or as essential to the execution of powers which are granted, authorizing he said Commissioners to purchase the goods in question, assuming all the facts proved by the plaintiff to be true.

3. That there is no evidence in this cause to show any delegation of authority from the Mayor and City Council to the Police Commissioners to purchase the goods in question, or of any subsequent ratification, sufficient to make the defendants liable.

4. That whenever the Board of Police orders out the military of the city to suppress insurrection, it must be done in the mode prescribed by the Code, and that the plaintiff must

show that all the requirements of the Code were complied with by the Board, to make them responsible for the acts of the military, and that even then any act done by the military, without order from the Board of Police, does not make the city authorities responsible, and the plaintiffs are not entitled to recover.

The Court below, (MARTIN, J.,) granted the prayers of the plaintiffs, and rejected the prayers of the defendants, to which rulings of the Court the defendants excepted, and the verdict and judgment being for the plaintiffs, appealed to this Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN, and WEISEL, J.

*Wm. Price,* for the appellants, maintained:

That the prayers offered on the part of the defendants below contained a true statement of the law of the case and ought to have been granted by the Court.

He cited Code of Public Local Laws, Art. 4, secs. 806, 809, 810 and also secs. 816 and 818, of the same Article.

*Wm. Schley,* for the appellees:

1st. In support of the defendants' 1st prayer, reliance was placed on §§ 818, 767 and 769, of Art. 4 of the Code. But the requirement to give estimates, &c., is merely directory. It is not of the essence of the powers of the board.

2nd. As to defendants' second prayer: The Police Commissioners, undoubtedly, for extraordinary emergencies, have the power to raise such additional force, as the exigency, in their judgment, may demand, § 809. If they can lawfully create an additional police force, they must necessarily have power to provide arms for the use of such force; and they may arm and equip them, as they may judge necessary, § 809. Their powers are very large, as shown by the provisions of

the different sections of the said article; and the corporation is liable to the same extent as if the Police Commissioners had been appointed by them, § 822.

3rd. The third prayer is based on the assumption that the Police Commissioners could only purchase these goods in virtue of delegated power from the city. But the board is superior to the Mayor and City Council in this respect, § 817, § 808.

4th. The 4th prayer of defendant does not raise any question material to the issue. The plaintiffs do not seek to make the city responsible for the acts of the military, but for the price of goods purchased by authority of the board of Police. It is immaterial to the plaintiffs that they were, in fact, applied to the use of the military acting as special police.

The appellees' counsel also referred to the Ordinances of the Mayor and City Council of Baltimore, No. 22 of April 20th, 1861, and Acts of 1861, ch. 2, and 1862, ch. 154, sec. 12.

BARTOL, J., dissented and filed the following opinion:

The only questions presented by this appeal arise upon the prayers. The appellees, who were the plaintiffs below, asked two prayers which were granted, and the appellants four, which were rejected. In the argument of the cause in this Court, two principal objections have been made to the prayers of the appellees: the first raising a question of law, growing out of the construction of the Code defining the powers and duties of the Police Commissioners; and the other based upon the alleged want of evidence to support the hypothesis of the appellees' prayers.

These questions will be considered in the order above stated.

Assuming that there was evidence legally sufficient to warrant the jury in finding the facts hypothetically stated in

the appellees' prayers, I think there was no error in the instruction given by the Superior Court to the jury "that the defendant was liable in this action." The specific objections to these prayers are clearly and concisely stated in the several prayers offered by the defendant, and may be more briefly examined by considering these last, in the order in which they were offered.

The defendant's first and second prayers are based upon the 818th section of the Code, vol. 2, Art. 4, which directs that the Board of Police Commissioners shall estimate in advance what sum shall be necessary, for each current fiscal year, to enable them to discharge the duties imposed upon them, and to certify the same to the Mayor and City Council of Baltimore; and these last are required to levy, assess and collect the same with the other taxes, &c. It is supposed by the appellants that without such preliminary estimates, it is not in the power of the Board of Police Commissioners to bind the city to the payment of any debt they may contract, or expenses they may incur in the discharge of their duties in preserving the peace of the city, no matter what may be the exigency requiring, in their judgment, the employment of extraordinary means for that purpose. This, in my opinion, is too narrow a construction of the provisions of the Code— the requirement to furnish estimates in advance is directory only. By the 809th section the board is expressly authorized to raise "for extraordinary emergencies such additional force as the exigency may in their judgment demand." This power carries with it the power to arm and equip such "additional force" when raised as the board may judge necessary. For the costs necessarily incurred in this way, it is simply impossible that preliminary estimates could be made, because the emergency contemplated in the Code is an extraordinary one, involving expenditures that could not be anticipated or foreseen by the board. The whole subject of the police of the

city is placed under their management and control; their duties enumerated in the 808th section are most comprehensive and important, and the plain intent of the Code is to require that the means which, in their judgment, are necessary for the proper discharge of their duties shall be furnished and paid for by the city. By the 818th section, a limit is placed upon the amount of expenses they may incur, beyond the annual estimates, in case of emergency; and it is expressly provided that for such extraordinary expenses they may issue "certificates of indebtedness in the name of the Mayor and City Council," which are to be added to the assessment and levy for the ensuing year. But if the Commissioners fail to issue such certificates, or the city to make the levy, that would be no reason why a party furnishing goods or labor for the use of the city, upon the order of the board, should be deprived of his action therefor against the city.

In the discharge of their duties, the board acts independently of the city authorities; but, by the 822nd section, it is declared that "the Mayor and City Council shall be responsible for their acts in the same manner as if they were created or appointed by the Mayor and City Council."

These views seem to me to answer the objection presented by the defendant's third prayer. Upon the subject entrusted to their control, the board is independent of and superior to the Mayor and City Council, (see sections 808, 817;) to purchase the articles furnished by the plaintiffs, and sued for in this case, no delegation of power from the city was necessary.

The fourth prayer of the defendant appears to me to be based upon a mistaken view of the nature of this action.— The plaintiffs are seeking to recover from the city the price of goods purchased for them by authority of the Board of Police, for the use of the city, and it is immaterial to them how the goods may in fact have been applied or used.

The next question to be considered is, whether there was any evidence in the cause to establish the facts enumerated in the plaintiffs' prayers.

I agree with the majority of the Court, that this question is open for examination in this appeal, notwithstanding this objection was not specifically taken at the trial below. The Act of 1862, ch. 154, does not apply. Here the objection taken is not that the Court below failed to submit to the jury a material fact—if this were so, the defect in the prayer would be cured by the Act of 1862; but the objection now taken is that the Court erroneously submitted to the jury to find facts without any evidence to support them. This objection if well founded would require a reversal of the judgment. But I do not agree with the majority of the Court in the opinion that there was a total failure of evidence of any fact material to the plaintiffs' case.

It is clearly proved that the goods of the plaintiffs were delivered upon the order of Isaac R. Trimble, and though the proof is not positive, there is evidence from which the jury might well infer, that they were carried directly to the office of the Board of Police. There is also proof that the Mayor and Police Commissioners recognized the authority of Trimble, and that he was acting with their knowledge and approbation, in command of the additional force raised ·by the authority of the Mayor and Board of Police for the preservation of the peace of the city in the extraordinary emergency then existing.

In my opinion the judgment in this case ought to be affirmed.

Goldsborough, J., delivered the opinion of this Court:

The appellees sued the appellant for goods bargained and sold.

This action resting upon either an express or implied assumpsit, the plea of the appellant puts the assumpsit in issue.

To create a privity of contract between the parties, and to enable the appellees to charge the appellant, it must appear that the goods alleged to have been sold and delivered, were sold and delivered to the defendant or to some person or persons authorized by the defendant to contract for it and on its behalf.

The claim, which is the cause of action in this case, originated at a time of great excitement, owing to the incidents which had occurred on the 19th of April 1861.

The alarm of the citizens of Baltimore appeared to indicate one of those extraordinary occasions on which the Police Board was required to call out an additional police force, according to the provisions of the 809th section of the 4th Article of the Code of Public Local Laws.

No additional force was called out, and it appears from the evidence, that at the time when the goods charged in the appellees' account were taken, their store was in the peaceable possession of the regular police.

Here the direct agency of the Police Board seems to have ceased, and Isaac R. Trimble, who assumed the title of Major General, organized a military force, and the goods of the appellees were procured by his orders. They were selected by Grafton D. Spurrier about the 25th of April, he officiating in the capacity of aid to Gen'l Trimble. They were packed in boxes and taken from the appellees' store by William Key Howard, another aid of Gen'l Trimble, and carried towards the office of the Police Board. One witness testified that he saw at their office boxes with the name of Poultney & Trimble on them, but did not know what they contained. When Gen'l Banks became military commander of the city, Col. Kenley was appointed Provost Marshal and took possession of the office of the Police Board, and while he was in possession, persons were seen to come from the office with arms, but whether those arms were a portion of those taken from

32 MARYLAND REPORTS.

Mayor & C. C. of Balto. vs. Trimble & Poultney.

the store of the appellees, or whether the persons having them were a portion of the police force, is not disclosed by the evidence.

There is some evidence that Gen'l Trimble was acting in concert with the Mayor and Police Board, but not under their control.

It becomes important to determine in this connection, whether the power conferred on Gen'l Trimble by the Police Board, if it was bestowed, was conferred by authority of the Act under which the board was organized.

If the emergency had arisen, such as is provided for in the 809th section of the 4th Article, then by the 816th section of the same Article, the board had the power to call on the sheriff of the city whose duty it is made to summon the *posse comitatus* to aid in preserving the public peace under the direction and control of the board. By the same section it is further provided, that in case the board shall deem it necessary, they may call on any officer of any military force in the city of Baltimore, organized or existing under the laws of this State. As Isaac R. Trimble is not shown to be in any way connected with such organized or existing force, we can find no warrant of law for his act in taking the goods in question and having them charged to the appellant.

But there is another objection to this claim of equal or greater weight than the one we have been considering. The whole duty of preserving the public peace within the city of Baltimore, with other kindred duties, being imposed upon the Board of Police, by the law (which is to be construed strictly, as it is in derogation of common right,) they are required by the 818th section of Article 4, to estimate annually what sum of money will be necessary for each current fiscal year, to enable them to discharge the duties imposed on them, and forthwith certify the same to the Mayor and City Council, who are required, without delay, *specifically* to

assess and levy such amount as shall be sufficient to raise the same, clear of all expenses and discounts, &c. By another provision in the same section it is further enacted, " that in case the amount so as aforesaid to be estimated by the said board shall, from any unforseen cause, prove insufficient for the necessary expenses of the current year, the said board are hereby authorized and empowered to issue certificates and raise money therefrom, as hereinbefore provided, to meet the said emergency; provided, that no such additional issue shall exceed the sum of thirty thousand dollars in any one year."

It is apparent from the reciprocal obligations and restrictions imposed on the Board of Police and the appellant by this section, that the board had no power to have charged to the appellant any claim not embraced in their estimate, and there is no evidence in the record that this claim was so embraced, nor could they delegate that power to Gen'l Trimble. If the claim arose out of the exigency heretofore spoken of, then it was the duty of the board to have paid it out of the money raised by the issue of their certificates.— They, alone, having the authority to disburse the funds incident to their office. But it is contended that the appellant is responsible for the claim in question because, by ordinance 22 of 1861, an appropriation of $500,000, was made " for the defence of the city against any danger that may arise out of the present crisis." That the articles composing the claim were military stores, such as were appropriate to the defence of the city. But the Act of 1861, ch. 2, confirming this ordinance, expressly provides that the appropriation shall be expended under the direction of the Mayor of the city, and we find no evidence in the record, to show that the claim of the appellees was either recognized or sanctioned by the Mayor.

We now proceed to consider the prayers of the appellees, which were granted, and those of the appellant, which were rejected.

The appellant objects to the prayer granted by the Court at the instance of the appellee, because there was no evidence in the cause to authorize the hypothesis on which it purported to be founded. The appellee insists it is too late to raise the objection, and relies on section 12, Article 5 of the Code, amended by the Act of 1862, ch. 154. It enacts "that the Court of Appeals shall, in no case, decide any point or question which does not appear by the record to have been tried and decided by the Court below; but no prayer or instruction, shall be deemed defective by reason of any assumption therein of any fact by said Court, or because of a question of law having been thereby submitted to the jury, unless it appears from the record that such objection was taken at the trial." Though, in our opinion, the Act of 1862 is not applicable to the case at bar, it may be proper to say, that the first branch of this Act is but a re-enactment of a former Act, codified originally, in sec. 12, Article 5.

"The assumption of a fact by the Court" is materially different from giving instructions to the jury without any evidence to support them. To assume a fact is to state as proved that which is to be proved, as if the jury find "that after the sale," assumes the fact of the sale, was therefore erroneous. 3 *Md. Rep.*, 146. But to instruct the jury upon an hypothesis of which there was no evidence, is to leave them to assume or find that for which there was no foundation. The errors, though closely similar, are by no means the same. The one is generally incidental and casual, the other is fundamental, deliberate and conclusive, and has always been held to be error for which the judgment would be reversed 8 *Md. Rep.* 118. 6 *Md. Rep.* 88. The minor error was intended to be cured by the amended Act, but the greater, in our judgment, was not included.

The appellant's third prayer expressly called on the Court below to say there was no evidence in the cause of any dele-

Mayor & C. C. of Balto. *vs.* Poultney & Trimble.

gation of authority from the Mayor and City Council to the Police Commissioners to purchase the goods in question.

The Board of Police are declared by law to be a constituted authority of the city of Baltimore to the same effect as if created and appointed by the Mayor and City Council. Code, Art. 4, sec. 822. They, or a majority of them, constitute a quorum. They are required to have a common seal, to appoint a treasurer, to keep a full journal of their proceedings, and cause their receipts and disbursements of money to be faithfully kept and entered in books provided for that purpose. Secs. 806, 821. They are authorized and required to issue certificates for their indebtedness, which are made receivable for taxes, provided, their certificates shall not exceed their estimated expenses more than $30,000 in one year. All these provisions indicate that, like other corporations, they must act through some authorized agent having the authority of a majority of the Board. No journal is produced, or other evidence in writing offered to show the connection between Gen'l Trimble and the Police Commissioners, and to constitute him the deputy of a deputy without some such evidence of the assent of the majority of the Board, would be carrying the doctrine of implied agency to a most dangerous and destructive extent. See *Mayor and City Council of Baltimore vs. Reynolds*, 20 *Md. Rep.*, 1.

After a careful analysis of the testimony, a majority of the Court think the Superior Court erred in granting the prayers of the appellees, and in rejecting the first, second and fourth prayers of the appellant.

*Judgment reversed.*

(Decided May 16th 1866.)