(Decided 9th March, 1886.)

CHARLES G. HUTZLER *vs.* CHARLES W. LORD.

*Sale of Shares of Stock—Purchaser—Failure of Purchaser to have Stock transferred on books of Company—Liability of Purchaser—Assessment on Stock—Reimbursement—Evidence—Book entries—Practice—Prayer.*

Where there is a sale of shares of stock of an Express Company, partly paid up, and the purchaser neglects to have the same transferred to himself on the books of the company, and the company through its assignee having called for an assessment on said shares, the seller is compelled by legal proceedings to pay the same, he is entitled to be reimbursed by the purchaser.

Hutzler *vs.* Lord.

On a sale of certain shares of stock in an Express Company, partly paid up, the purchaser neglected to have the same transferred to himself on the books of the company, and the company through its assignee having called for an assessment on said shares, the seller was compelled by suit to pay the same. In an action against the purchaser by the seller to recover the amount paid by him, he offered in evidence certain equity proceedings which showed that an assessment of thirty dollars per share payable to a trustee had been made on the stock of the company, and also that a judgment had been recovered against him for the same, and that said judgment had been satisfied. On objection by the defendant to the admission of these proceedings, it was HELD:

That it was necessary for the plaintiff to show that he had been compelled to pay the money *in invitum*, and in what way he had been compelled; and the decree in equity was the initial point in the course of proceedings which culminated in the judgment against him. He was bound to show by competent proof every step in these proceedings; and the certified copy of the decree was evidence that it had been rendered, and for such purpose it was admissible.

The defendant having testified that he bought and sold stock in 1866, through T., a broker, and through no one else, the entries in the books of T. are admissible as evidence on behalf of the plaintiff to show that T. in the year 1866, purchased certain shares of stock which were the property of the plaintiff, and that the purchase was made for account of the defendant, such entries being of the nature of original evidence and not hearsay.

Where objection is taken to evidence in gross, and a part of it is admissible, the objection must be overruled.

Where a prayer cannot be granted in its entirety, it is properly rejected.

Where a declaration contains several counts, and there is a general verdict, one good count will sustain the judgment.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*First, Second and Third Exceptions* stated in the opinion of the Court.

*Fourth Exception.*—The plaintiff presented the two following prayers:

1. If the jury shall find from the evidence that the plaintiff was owner of thirty shares of the stock of the National Express Company, partly paid up, and that on the thirtieth day of January, 1866, he sold and delivered the receipts for the same to the defendant, and the defendant failed to have the same transferred to himself on the books of said company, and that subsequently said company made an assignment of its property, to wit: on the 20th day of September, 1866, to certain trustees in said assignment mentioned, and through proceedings in equity in Virginia, one John Glenn became afterwards sole trustee, and as such was directed by order of Court to assess and collect thirty per centum of the par value of said stock— the said par value being $100 per share, and eighty per centum of same being unpaid—to meet the indebtedness of said company, and in pursuance of said order of Court brought suit against the plaintiff for said thirty per centum; and shall further find that thereupon said plaintiff gave notice to said defendant to come in and defend said suit, and that said defendant failed and refused to defend the same, and that thereupon a judgment was rendered against the plaintiff for the sum of $1080, and $14.80 costs, in satisfaction of said assessment, which said judgment and costs the plaintiff paid and satisfied with the sum of $746.80, then their verdict must be for the plaintiff.

2. If the jury find from the evidence in this case that L. J. Tormey & Co., were brokers doing business for the defendant, and shall further find that as such they purchased on the 30th of January, 1866, fifty shares of the stock of the National Express and Transportation Company from J. Pennington, a broker employed by the plaintiff, and that upon the books of the said L. J. Tormey & Co. it appears that said L. J. Tormey & Co. delivered to said defendant fifty shares of said stock, evidenced by two re-

ceipts, one of twenty shares and another of thirty shares, the latter then standing in the name of the plaintiff, C. W. Lord, then the same is legal evidence to show a delivery from said plaintiff to said defendant of thirty shares of the stock of said company.

The defendant presented four prayers, as follows:

1. That there is no evidence in this case legally sufficient to enable the plaintiff to recover, and the verdict of the jury must be for the defendant.

2. That there is no evidence in this case to prove the actual delivery of the receipts mentioned in the books of Mr. Tormey, the broker, to the defendant, and no evidence of the delivery of the certificate of stock of the plaintiff to the defendant, and the plaintiff therefore cannot recover.

3. If the jury shall find from the evidence that the assessment receipt for thirty shares of stock subscribed by the plaintiff to the stock of the National Express and Transportation Company, was entered in the book of Mr. Tormey, a broker, as having been sold and delivered on the 30th of January, 1866, to the defendant; and shall further find that the plaintiff received the certificate for the same stock of the said Express Company on the 13th of February, 1866, then the plaintiff cannot recover, unless the jury shall find that said certificate of stock was assigned by said plaintiff to the defendant subsequent to said 13th of February, 1866.

4. That if the jury believe from the evidence that the plaintiff transferred to the defendant the receipts for the shares of stock set out in the sixth count of the declaration, and that defendant neglected to have the same transferred on the books of said company, then the plaintiff's right of action for such neglect arose within a reasonable time after such transfer was made; and if more than three years before this suit, they must find for the defendant.

The Court (DUFFY, J.,) granted the first and refused the second prayer of the plaintiff, and rejected the first, second and fourth prayers of the defendant, and granted his third prayer. The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, RITCHIE, and BRYAN, J.

*D. Greenbaum*, for the appellant.

*Henry D. Loney*, and *John V. L. Findlay*, for the appellee.

BRYAN, J., delivered the opinion of the Court.

The plaintiff below (now appellee) alleged that he sold the defendant thirty shares of the stock of the National Express and Transportation Company (partly paid up) and that the defendant neglected to have the shares transferred to himself on the books of the company, and that the company, through its assignee having called for an assessment on said shares, the plaintiff was compelled by suit to pay the same. He sought to recover from the defendant the amount so paid.

On the supposition that the plaintiff's averments were sustained by proper proof, we think that his claim was well founded. The object of the sale of the stock must have been to denude himself of all interest in it, and to transfer it to the purchaser. Henceforth, all advantages arising from the ownership were to accrue to the purchaser, and all burdens arising therefrom were to be borne by him. It is simply impossible to suppose that, in making the contract of sale, the parties intended that the seller should pay future assessments for the benefit of the purchaser. It would be just as reasonable to infer that he was to receive any future dividends which might be de-

clared. If, then, the seller was compelled by legal proceedings to pay assessments properly chargeable to the ownership of the stock, he paid them for the benefit of the purchaser, and *ex œquo et bono*, he ought to be reimbursed. The plaintiff offered in evidence certain proceedings in the Chancery Court of the City of Richmond, Virginia, which showed that an assessment of thirty dollars per share payable to a trustee had been made on the stock of the company; and also a judgment against him for $1080, being the amount of said assessment on thirty shares with interest, and a satisfaction of said judgment by paying a note for $750 with some interest and costs of suit; and also a notice given by him to defendant to appear and defend the suit in which the judgment was rendered. It appeared that the Richmond Court had passed an order that if the stockholders should pay within a limited time twenty-five dollars a share on their stock, with such costs as had been incurred by the trustee in bringing suits, they should be released from the assessment of thirty dollars a share; and that the benefit of this order had been extended to the plaintiff by agreement although he had not paid within the limited time. The plaintiff also offered in evidence certain entries in the books of Pennington and of L. J. Tormey & Co., who were stock-brokers. These entries were offered for the purpose of showing the sale of the stock. The defendant took his first exception to the admission of the Chancery proceedings. The decree, of course, was not evidence against the defendant of any fact recited in it. It was necessary for the plaintiff to show that he had been compelled to pay this money *in invitum*, and to show in what way he had been compelled. The decree was the initial point in the course of proceedings which culminated in the judgment against him. He was bound to show by competent proof every step in these proceedings. The certified copy of the decree was certainly evidence that it had been rendered; and we do not under-

stand that it was offered for any other purpose. 1 *Green-leaf on Evidence*, sec. 538. . The defendant excepted to the evidence of the agreement by which the . note for $750 was (when paid) to be a satisfaction of the judgment. The suit was brought to the December Rule Day, 1883, of the Court of Common Pleas; on the eighteenth of January, 1884, the defendant received from the plaintiff notice to defend the suit, and, on the seventeenth of April, 1884, judgment was rendered against the plaintiff for $1080 and costs. This judgment the plaintiff satisfied by the payment of the note for $750 with interest and costs. If there had been unfairness or collusion in the suit, as a matter of course the defendant would not be bound. Of this there is no suggestion. The defendant had the right to take charge of the defence, and if he could have defeated the suit, he was at liberty to do so, and free himself altogether from liability on this account. The judgment shows the amount of the liability imposed on the plaintiff, as a charge on the ownership of the stock, and his settlement of it at a smaller sum was a clear gain to himself in the first instance, and ultimately to any one, who should be liable to reimburse him his expenditure. The third exception states that "the plaintiff having offered in evidence certain entries in the books of J. Pennington, a broker, and certain entries in the books of L. J. Tormey & Co., brokers, which entries are set out in the testimony in the fourth bill of exception, tending to prove the issue joined, the defendant objected to said evidence, unless the same was followed up by proof of delivery of said stock to the defendant, and the defendant having objected to said evidence &c., &c., the Court overruled the objection, &c." This is a very unusual mode of taking an exception to evidence. It was probably taken after all the testimony had been offered, and as we see that these entries were admitted subject to exception, we will regard it as a motion to exclude the evidence. We were told at

the argument that Pennington and Tormey were both dead; we find, however, no evidence of their decease in the record, and we must deal with the case as we find it. The proof tended to show that Martin Lewis had been employed by the plaintiff to sell this stock for him, and that he was dead. The entries in the books of Pennington are offered for the purpose of showing a sale of fifty shares of stock to L. J. Tormey & Co., on account of Lewis; and the entries in Tormey's books are offered to show that he purchased said stock from Pennington, of which twenty shares belonged to Loney, and thirty shares to the plaintiff, and that the purchase was made for the defendant. These transactions purport to have taken place on the 30th of January, 1866. The defendant testified that he bought and sold stock in 1866 through L. J. Tormey & Co., and through no one else. The entries in Pennington's books ought not to have been admitted without proof of his death. But as Tormey (doing business under the name of Tormey & Co.,) was employed by the defendant, he was his agent for this purpose, and his acts, declarations and admissions within the scope of his authority, and in the prosecution of the business in hand, are to be taken as the acts of his principal. 1 *Greenleaf on Evidence, sec.* 113. When Tormey bought the stock, if he had given a receipt for it in defendant's name, it would have been evidence that it was bought for him. The man who kept his purchase-and-sales book testifies that he made an entry showing a purchase from Pennington of fifty shares of this stock for C. G. Hutzler (the defendant); this was made on the day of the purchase; the stock was received on the next day; and on that day the entry in reference to the transaction was: "Pennington, 50 shares National Express; received receipt W. A. Loney, 20 shares: C. W. Lord's receipt for 30." This *receipt* is stated by the plaintiff in his testimony to be the only evidence of the stock which he held. These entries in Mr. Tormey's books are

declarations by him; according to *Greenleaf*, (*sec.* 113) "they are of the nature of original evidence and not hearsay; the representation, or statement of the agent being the ultimate fact to be proved, and not an admission of some other fact;" the admission or declaration of the agent binds the principal when it is made during the continuance of the agency in regard to a transaction then depending, *et dum fervet opus. Ibidem.* We think, therefore, that the entries in Tormey's books were properly laid before the jury. As the objection was to both sets of entries, the Court could not sustain it, if any portion of the evidence was admissible. *Waters vs. Dashiel*, 1 *Md.*, 474; *Carroll's Lessee vs. Granite Manufacturing Company*, 11 *Md.*, 468; *Pettigrew vs. Barnum*, 11 *Md.*, 451. The fourth exception was to the ruling of the Court on the prayers. The defendant's second prayer asked the Court to rule that there was no evidence to prove the actual delivery of the receipt mentioned in the books of Mr. Tormey to the defendant, and no evidence of the delivery of the certificate of stock of the plaintiff to the defendant, and that therefore the plaintiff could not recover. It was not necessary to show a delivery of the receipt to the defendant, a delivery to Tormey, his agent, was sufficient. We see no evidence that the certificate of stock was ever delivered to the defendant; but as the prayer could not be granted in its entirety, it was properly rejected. On the hypothesis of the defendant's third prayer, it was necessary for the plaintiff to prove the assignment of the certificate to the defendant, and by that prayer he requires the question to be submitted to the jury. It would have been error in the Court to have ruled that, independently of that hypothesis, the plaintiff could not recover, because there was no evidence of the delivery of the certificate of stock. The defendant's fourth prayer maintains that if the plaintiff transferred to him the receipt for the shares of stock, and he neglected to have them transferred on the books of the

company to his own name, then the right of action accrued within a reasonable time after the transfer of the receipt, and the suit is barred by limitations. The plaintiff's loss accrued when he was compelled to pay the judgment, and limitations would begin to run from that time. Our views on the other prayers are sufficiently indicated by what has been said in the previous part of this opinion. The motion in arrest of judgment was properly overruled. The declaration contained seven counts, and there was a general verdict. It is well settled that under these circumstances one good count will sustain a judgment.

We see no reason for a reversal.

*Judgment affirmed.*

(Decided 9th March, 1886.)