## THE ANNAPOLIS GAS AND ELECTRIC LIGHT COMPANY *vs.* OSCAR FREDERICKS.

*Action for Injury Caused by Electric Wire on a Bridge—Evidence—Instructions to the Jury—Inadequate Exception.*

When the question is whether an electric light wire, by contact with which the plaintiff was injured, was safely and properly located or not, evidence as to its condition some months after the injury is not admissible.

If an electric light wire was repaired after the plaintiff was injured by contact with it, and was afterwards taken down, evidence as to its condition at the time of the trial is not admissible to show that it was not properly insulated at the time of the accident.

Evidence as to the height of electric wires in a city or elsewhere is not admissible to show that a particular wire was not properly located on a certain bridge.

When the plaintiff in an action against an electric light company alleged that one of its wires on a bridge was imperfectly insulated and sagged down, and that when passing on the bridge he came in contact with it and was injured; while the defendant alleged that the wire was placed beyond the reach of travellers on the bridge, and was safe, and that the plaintiff projected himself beyond the bridge, and so came in contact with it, a prayer offered by the plaintiff is erroneous when it refers in general terms to the place where plaintiff was injured as testified to by his witnesses, and which wholly ignores the testimony offered by the defendant.

A prayer authorizing the plaintiff to recover damages for a permanent injury if the jury find he was permanently injured is not proper when there is no evidence in the case that his injury was permanent.

An exception taken to "the line of argument" of counsel before the jury will not be considered when it fails to set forth the ruling of the Court on the exception.

*Decided February 2nd, 1910.*

Appeal from the Circuit Court for Anne Arundel County (FORSYTHE, J.).

*Plaintiff's 1st Prayer.*—If the jury find from the evidence that on or about the eighth day of August, 1907, defendant owned, maintained, operated and controlled a system of wires in Annapolis and in Eastport in Anne Arundel County and upon the bridge spanning Spa Creek and connecting Annapolis and Eastport and that said bridge was a public highway at said time, and that said wires were hung and suspended along the side of said bridge on cross bars attached to the bridge on the top of the iron trusses running along the south side of the bridge, and shall find that said wires were loose and sagging down so close to said bridge that the plaintiff lawfully using said bridge and using due care on his part came in contact with one of said wires, and shall further find that defendant transmitted over or through said wires on said bridge a voltage ranging from five hundred volts to two thousand volts and shall further find that such electric current when coming in contact with human beings is dangerous to life and limb, and shall further find that said electric—were without proper insulation so that the wire transmitting said electric current was exposed and in a condition dangerous to the life and limb of human beings coming in contact therewith by the exercise of ordinary diligence, ascertained that its wires on said bridge were uninsulated and so sagging as to be dangerous, and shall further find that defendant suffered said wires to be and continue without proper insulation and sagging down, and that said wires were in the said condition on the night of August 8th, 1907; and at the place where the plaintiff was injured as testified by the plaintiff's witnesses,

if the jury so find, and that on the said 8th day of August the plaintiff, while lawfully using said bridge and using due care came in contact with said wire and that said wire was then and there charged with a current of electricty ranging from five hundred volts to two thousand volts, and that thereby the plaintiff was then and there greatly shocked and stunned and his right hand burned and injured, then the plaintiff is entitled to recover.   (*Granted.*)

*Plaintiff's 2nd Prayer.*—If the jury find for the plaintiff, then, in estimating the damages, they are to consider the health and condition of the plaintiff before the injuries complained of as compared with his present condition in consequence of the said injuries; and whether said injuries are in their nature permanent and how far they are calculated to disable the plaintiff from engaging in those business pursuits for which, in the absence of the said injuries, he would have been qualified; and also the physical and mental suffering to which he has been subjected by reason of the said injuries, and to allow such damages as in the opinion of the jury will be fair and just compensation for the injuries which the plaintiff has suffered.   (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*D. G. McIntosh* and *James W. Owens,* for the appellant.

*James M. Munroe* (with whom was *Robert Moss* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This case comes before the Court upon a second appeal. The first appeal will be found reported in 109 Md. 596.

On the first trial, there was a judgment, on verdict, in favor of the plaintiff for $500 and this judgment on appeal to this Court was reversed for errors in the ruling of the

Court below and a new trial was awarded. Upon a second trial, the plaintiff recovered a judgment of $400 and the defendant brings this appeal.

The questions on the record now before us are presented by eight bills of exception reserved and taken by the defendant in the course of the trial in the Court below.   Six of these relate to the rulings of the Court upon the evidence, the seventh, to the action of the Court in granting the plaintiff's first and second prayers, and in overruling the defendant's special exceptions to these prayers, and also, to the ruling of the Court in rejecting the defendant's, first, second, fourth and sixth prayers.   The eighth exception purports to embrace an objection by the defendant to a line of argument on the part of the plaintiff's attorney in the course of the trial in the Court below.   The exception is in these words: "And at the argument of the case, in the course of argument the attorney for the plaintiff stated, that the plaintiff had. offered but two prayers both of which had been granted, and that the defendant had offered seven, some of which were granted and some were rejected, to which line of argument on the part of the plaintiff's attorney the defendant excepted and prays the Court to sign this its eighth bill of exceptions, which is by the Court accordingly done this 28th day of September, 1909."

We will consider these exceptions in their regular order, in so far as the questions presented by them were not passed upon and determined by us, on the former appeal.

It will be seen from the record that there was no difference in the pleadings on the second trial, and the essential facts were practically and substantially the same as on the first trial.

The appellant's counsel insists in his brief that the circumstances under which the plaintiff suffered the injury as set forth in the record are substantially the same as described in the record in the previous case tried in this Court, and reported in 109 Md. 598.   And we find this statement is fully

confirmed by an examination and comparison of the two records, and is in no way controverted by the appellee.

The suit was brought by the appellee against the appellant company on the 13th day of January, 1908, in the Circuit Court for Anne Arundel County to recover damages for an injury alleged to have been sustained by him by contact with an electric wire charged with electricity, maintained and operated upon a public bridge connecting the City of Annapolis and the village of Eastport, Anne Arundel County.

The declaration alleges as the basis of the suit that the bridge is a public highway and the wires are hung and suspended over and upon poles controlled by the defendant upon the streets of the city and village and upon the bridge for the purpose of doing a general electric light business in the City of Annapolis and the village of Eastport. It also charges that these wires were permitted to become and be without proper insulation and by reason thereof contact with the wires was dangerous to life, and the defendant while lawfully using and passing over the bridge, without any negligence on his part, came in contact with the wires and was injured.

The evidence upon which the plaintiff relies to sustain the judgment in this case is fully set out in the opinion in the former appeal and we shall refer only to such differences as may appear in the record in this case as we may find necessary to determine the question whether or not the Court committed any error in its rulings on the second trial, as to justify and warrant a reversal of the judgment on this appeal.

The first exception was taken by the defendant to a question propounded, and the answer given by Judge James R. Brashears, a witness called on behalf of the defendant.

Judge Brashears testified that he was familiar with the condition of the appellant's electric wires over Spa bridge, because he lived near Eastport and had travelled over the bridge at least twice a day of each week including Sunday. He further testified that he was familiar with the condition

of the wire previous to and up to the time of the accident and the wire seemed to him to be out of the reach of any one, unless a person sprung out and grabbed it, and that it was not dangerous to persons travelling over the bridge.

He was, then, asked the following question: Q. 4. "Have you recently examined that wire." Answer, "Yes." The record then shows the following entry: "(Objected to by counsel for the plaintiff and objection sustained, to which ruling of the Court the defendant reserves an exception.)"

Assuming that this objection was presented in time and the ruling of the Court was upon the question propounded to the witness, we fail to see any error in the ruling of the Court in sustaining the plaintiff's objection. An examination of the wires at the place of accident in September, 1908, could reflect no light upon the position or condition of the wires in August, 1907, the date of the accident. According to the proof, the wires had been repaired along the line from time to time after the accident, and after the storm, on the 4th of March, 1909, they were "all taken down, and new wire put up."

The second and third exceptions present offers of proof by the defendant along the same line, and will be considered together.

It appears that after the ruling set out in the first bill of exception, the witness was asked, "did you make an examination of that wire in company with Mr. Owens, counsel for defendant recently," offering to follow up the same by proof that at the time of said examination, the position of the wire on the bridge was the same as it was at the time of the accident.

And by the third exception, it appears that after the witness Crosby, an electrical constructor, had testified on the part of the defendant that the uninsulated places on the wires had been repaired from time to time, and that after the storm of March, 1909, he had removed all the wires over Spa Bridge and that he had "that wire" in the Court House, "exactly as it was when he took it down," the defendant of-

fered to produce the wire in use at the time of the accident
and to follow up the same by proof that the wire is now in
the same condition as it was at the time of the accident so far
as insulation is concerned witness could not say, whether re-
pair to places after accident was not at place of accident for
the purpose of contradicting the plaintiff's witnesses as to the
extent to which the wire was uninsulated and exposed at the
time of the accident.

The Court sustained the plaintiff's objection to this char-
acter of testimony and these rulings form the basis of the
second and third bills of exception.

It is hardly necessary to cite authority to sustain the rul-
ings of the Court on these exceptions under the facts of this
case.

On the former appeal, we said, the general rule is well set-
tled that evidence of the subsequent condition of the place
where the accident occurs is not admissible to show a negli-
gent condition at the time of the injury because the question
of negligennce is to be determined by the actual condition at
the time of the injury.   There are certain well recognized
qualifications and exceptions to this rule, but as the facts of
this case do not bring it within any of these exceptions, they
need not be discussed here.   We further said this character
of testimony was too remote and misleading to reflect any
light upon the question of negligence involved in the case.
*Electric Light Co.* v. *Lusby,* 100 Md. 650; *Ziehm* v. *United
Electric Co.,* 104 Md. 52.

The case of *Brooke* v. *Winters,* 39 Md. 509, relied upon by
the appellant, is in no way in conflict with the cases above
cited.   It was said, in *Brooke* v. *Winters, supra,* whether the
proposed proof of facts subsequent to the suit, was admissi-
ble or not, did not depend upon the time of their existence
before or after the suit, but upon their *relevancy* to the *issue*
and *their capability* of *explaining it.*

The position of the wire upon the bridge in 1909, nearly
two years after the date of the accident in this case would
afford no fair or reasonable presumption as to the position of

the wire at the date of the accident, because the whole line had been taken down and a new one put up. The condition of a place or thing at the time of an injury says Mr. Wigmore, in his work on *Evidence,* page 367, may always be evidenced by showing its condition before or after that time provided no substantial change has occurred.

Nor do we find any error in the ruling of the Court in refusing to permit the defendant to produce the wire in use at the time of the accident. This wire, as we have seen, had been repaired from time to time after the accident, and had been so damaged by the storm of March, 1909, that it had to be removed, and new wire substituted therefor.

It would be exceedingly dangerous and obnoxious to the well established rules of evidence, to permit the introduction of this character of testimony, after such a length of time, and after the wires had been repaired and had been subject to such use, for the purpose of showing that they remained in the same condition as at the date of the accident. It would not be relevant to the issue nor capable of explaining it, but entirely too remote and misleading. *Md. D. & V. R. Co.* v. *Brown,* 109 Md. 319; *Columbia R. R. Co.* v. *Hawthorne,* 140 U. S. 202.

The fourth, fifth and sixth exceptions are practically the same and are to questions and answers, asked of the witness Miller, on cross-examination.

The exceptions to the admission of this evidence, we think, were properly taken. The questions were improper on cross-examination and the testimony elicited was not relevant to the issue in the case. It was calcuted to mislead the mind of the jury. The height of the wires above the surface of the ground in the streets of Annapolis and their distance above the level of the streets, could furnish no correct guide, in determining the proper disposition of the wires on a bridge over Spa Creek. And whether or not they were suspended like those on Light Street Bridge, Baltimore, had no bearing whatever upon the issue in this case. There was error in these rulings and it would be idle to hold the admission of

this character of evidence was "error without injury." *Sims* v. *American Ice Co.* 109 Md. 72.

We come to the rulings on the prayers and shall request the reporter to set out the plaintiff's prayers in the report of the case. The plaintiff's two prayers were granted. The defendant's first, second, fourth and sixth prayers were refused, and the third, fifth and seventh were granted. The defendant's prayers contain the same legal propositions presented on the former appeal and what we said in regard to these prayers on that appeal, we find applicable here.

The defendant's granted prayers we think, gave it all the law to which it was entitled and for the reasons stated on the former appeal its other prayers were properly rejected.

The plaintiff's first prayer, it will be seen was not properly framed, and the omission of the words "Defendant," and "could have" in the body of the prayer, renders it somewhat vague and unintelligible. The vice of the prayer, however, consists in locating "the place where the plaintiff was injured as testified by the plaintiff's witnesses" alone. The prayer was entirely too general and indefinite. It ignored the theory of the defendant's case, and the testimony offered in its support.

While the trial Court is not bound to modify instructions submitted by counsel so as to make them correct statements of the law, the Court should refuse an incorrect prayer, not sanctioned by the rules of law. *Dodge* v. *Hughes Co.,* 110 Md. 382; *Birney* v. *Tel. Co.,* 18 Md. 357; *Hutzler* v. *Lord,* 64 Md. 534.

The plaintiff's second prayer was the usual damage prayer, but there was no proof whatever in this case to support the hypothesis of fact stated in the prayer that the plaintiff's injury was permanent.

The defendant's special exception to this prayer, on the ground there was no evidence that the injuries complained of are permanent in their nature should have been sustained and the prayer refused. There was no evidence upon which this instruction could be based, and it is error to grant an

instruction upon any proposition, when there is no proof to sustain it.

Similar instructions have frequently been disapproved and held to be erroneous and prejudicial by this Court. *Long* v. *Eakle,* 4 Md. 454; *Balto.* v. *Poultney,* 25 Md. 18; *Wilson* v. *Merryman,* 48 Md. 328.

The eighth bill of exception purports to present an objection by the defendant to a "line of argument" on the part of the plaintiff's attorney "in the course of the argument of the case," but it does not state any ruling of the Court thereon. It is, therefore, immaterial for us to express any opinion as to the statement set out in the record.

For the errors indicated, the judgment will be reversed and a new trial will be awarded.

*Judgment reversed, and a new trial award-*
*ed, with costs.*