## THE PEOPLE *v.* HOGE ET AL.

CHARTER OF SAN FRANCISCO—CONSTITUTIONAL LAW.—Section 8, art. xi, of the Constitution—providing that " any city, containing a population of more than one hundred thousand inhabitants, may frame a charter for its own government, etc.—is self-acting, and does not need legislation to give it effect.

ID.—ID.—ELECTIONS—BOARD OF SUPERVISORS—BOARD OF ELECTION COMMISSIONERS—BOARD OF. FREEHOLDERS.—Whatever powers were vested in the Board of Supervisors of San Francisco by the Consolidation Act, or the Political Code, were, under §§ 1, 33, and 34 of the Act of April 18th, 1878, transferred to the Board of Election Commissioners, in express terms; and the authority to cause a Board of Freeholders to be elected to frame a charter, (under the provisions of § 8, art. xi, of the Constitution) is therefore *not* vested in the former body.

ID.—ID.—ID.—The only condition imposed by the Constitution to make the election, provided for in § 8, art. xi, of the Constitution, valid, is, that the freeholders must be chosen at a general or special election; and, where there has been such an election, the voice of the people is not to be rejected for a defect, or even a want of notice, if they have in truth been called upon and have spoken.

ID.—ID.—ID.—ID.—ID.—ID.—THORNTON, J., dissenting, was of the opinion that the power of fixing the day for holding an election, under the provisions of § 8, art. xi, of the Constitution, was not vested in the Board of Election Commissioners, or in the people acting *en masse;* and that such power, being legislative in its nature, was vested in some authority competent, under the Constitution, to legislate on the subject; and that the election of the freeholders involved in this cause was held without authority, and was void.

APPEAL from a judgment for the defendants, in the Superior Court of San Francisco, Department No. 3. WILSON, J.

*Rhodes & Barstow,* for Appellants.

The Board of Election Commissioners had no power to order an election of a Board of Freeholders, or to call a special election. The Constitution does not confer any such power upon the board, nor is it conferred by the act organizing the board. (Stat. 1878, p. 299.) That act merely transferred to the board the powers and duties theretofore exercised and discharged by the Board of Supervisors. At that time the latter board had no power to call a *special election.* The power to cause a Board of Freeholders to be elected is vested in the city. Section 8 reads: " Any city   *   *   *   may frame a charter," etc. When power is granted to a municipality, which is not ex-

pressly conferred upon some particular department or officer, and is not of such a character that it must be exercised by some particular department or officer, such power vests in the legislative department of the municipal government.   (1 Dillon on Mun. Corp. §§ 208, 197, 181; *Central Bridge* v. *Lowell*, 15 Gray, 106–116.)

Legislation is needed to give effect to § 8, art. xi, of the Constitution.   No provision having been made in the Consolidation Act for the calling of special elections, none can be held without an act conferring that authority upon the city.   In the absence of a call for such an election, duly made by the proper authority, the vote of the people would be as nugatory as would be the vote of all the electors cast the day before the day which may have been duly fixed by competent authority.   (*Kenfield* v. *Irwin*, 52 Cal. 169, and cases cited.)

*Robert Ash*, also for Appellant.

The Constitution does not confer the power to call an election upon the Board of Election Commissioners, nor upon the Common Council, nor upon the Mayor, but upon the city itself; and the city can act through its legislative body, when power is thus conferred.   (*Mayor of New York* v. *Furze*, 3 Hill, 612.) The Board of Election Commissioners have only the powers conferred upon them by the Act of March 18th, 1878—namely, for " the conduct, management, and control of elections."   These powers relate only to what is necessary to be done, after the call for an election is made by competent authority.   Nowhere in the Consolidation Act are the supervisors authorized to call an election.

*A. L. Hart*, Attorney-General, also for the Appellant.

*S. M. Wilson, Jas. T. Boyd, Ralph C. Harrison, R. M. Estee, T. B. Bishop*, and *T. I. Bergin*, for Respondents.

MORRISON, C. J.:

Section 8, art. xi, of the Constitution reads as follows :
"Any city containing a population of more than one hundred

thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this State, by causing a board of fifteen freeholders, who shall have been for at least five years qualified electors thereof, to be elected by the qualified voters of such city at any general or special election, whose duty it shall be, within ninety days after such election, to prepare and propose a charter for such city, which shall be signed in duplicate by the members of such board, or a majority of them, and returned, one copy thereof to the Mayor, or other chief executive officer of such city, and the other to the Recorder of Deeds of the county. Such proposed charter shall then be published in two daily papers of general circulation in such city for at least twenty days; and within not less than thirty days after such publication it shall be submitted to the qualified electors of such city at a general or special election; and if a majority of such qualified electors voting thereat shall ratify the same, it shall thereafter be submitted to the Legislature for its approval or rejection as a whole, without power of alternation or amendment, and if approved by a majority vote of the members elected to each house, it shall become the organic law thereof, and supersede any existing charter and all amendments thereof, and all special laws inconsistent with such charter."

The case as presented to the Court for its decision shows that the City and County of San Francisco is and was, during all the periods of time stated, a municipal corporation duly organized, and acting under a certain statute of the State of California, entitled "An Act to repeal the several charters of the City of Francisco, to establish the boundaries of the City and County of San Francisco, and to consolidate the government thereof," approved April 19th, 1856, and the several acts amendatory thereof and suppplementary thereto, and that said city and county contains a population of more than one hundred thousand inhabitants.

It further appears, that on the 4th of March, 1880, the Board of Election Commissioners of said city and county, organized under a statute of this State, entitled " An Act to regulate the registration of voters, and to secure the purity of elections in the City and County of San Francisco," approved March 18th, 1878, passed and adopted the following resolution:

"*Resolved*, By the Board of Election Commissioners for the City and County of San Francisco, State of California, that a special election in and for the City and County of San Francisco, be held on the 30th day of March, 1880, for the purpose of electing fifteen freeholders, who shall have been for at least five years qualified electors of the said city and county, to prepare and propose a charter for said city and county, as provided for in said Constitution, and that the qualified voters of said city and county be duly notified to meet in their respective precincts on Tuesday, the 30th day of March, 1880, at said special election, for the purpose of electing the said fifteen freeholders, who shall have been for at least five years qualified electors of said city and county, to prepare and propose a charter for said city and county."

It also appeared that on the 4th day of March, 1880, the Register of Election, by order of the Board of Election Commissioners, published a notice that a registration of voters for the election of fifteen freeholders would commence on Friday, March 5th, and would be continued from that time until March 15th. That on the 19th day of March, 1880, the Board of Election Commissioners issued a proclamation for a special election of fifteen freeholders, to be held on Tuesday, the 30th day of March, 1880, and in pursuance of such proclamation, public notice of such election was duly given.

It further appears from the transcript in the case, that a special election was ordered by the Governor of the State, to be held on the same day, March 30th, 1880, for the election of a Senator from the Eighth Senatorial District, comprising the City and County of San Francisco, and the County of San Mateo, to fill a vacancy in such senatorial district, " occurring from the inability of one Robert Desty, who was elected to said office at the general election held throughout this State on the 3d day of September, A. D. 1879."

It also appears that at such special election, held March 30th, 1880, the defendant Joseph P. Hoge, and fourteen others named in the amended complaint, received a majority of all the votes cast, and a larger vote than was polled for the person elected at that time a Senator to fill the vacancy above referred to.

This is a proceeding in the nature of a *quo warranto*, under

§ 803 of the Code of Civil Procedure, to oust the defendant from the office claimed by him under and by virtue of such special election held on the 30th of March, 1880.

On the part of the people the following grounds are taken:

1. The Board of Election Commissioners had no power to order an election of a Board of Freeholders.

2. The Board of Election Commissioners had no power to call a special election.

3. The authority to cause a Board of Freeholders to be elected, to pass a charter, is vested in the city—that is to say, in the Board of Supervisors.

4. Legislation is needed to give effect to § 8, art. xi, of the Constitution.

" An Act to regulate the registration of voters, and to secure the purity of the elections in the City and County of San Francisco," approved March 18th, 1878, (Laws of 1877–78, p. 299) is the statute under which the Board of Election Commissioners acted in the matter of electing fifteen freeholders to frame a charter for the City and County of San Francisco, and we will briefly refer to two or three sections of the act.

Section 1 provides that " the conduct, management and control of elections and matters pertaining to elections in the City and County of San Francisco, is hereby taken from the Board of Supervisors and vested in a board of five commissioners, who shall consist of the Mayor, Auditor, Tax Collector, the City and County Attorney, and the City and County Surveyor of said city and county, which board is hereby invested with all the powers and charged with all the duties as to elections and matters pertaining to elections now vested in said Board of Supervisors."

Section 33. " All provisions for carrying out the registration and election laws of said City and County of San Francisco shall be made by the Board of Election Commissioners, and demands on the treasury authorized or allowed by them for such purposes, shall have the same force and effect as if authorized or allowed by the Board of Supervisors."

Section 34: " All of the provisions of the Political Code touching the registration and qualification of voters and the method of calling, holding, and conducting elections, in force in

said city and county at the passage of this act, shall continue in force therein, so far as they are not inconsistent with the provisions hereof."

Section 1056 of the Political Code provides that "whenever a special election is ordered by the Board of Supervisors, they must issue an election proclamation, containing the statement provided for in subdivision 1 of § 1054, and must publish and post it in the same manner as proclamations issued by the Governor."

Whatever powers over elections were vested in the Board of Supervisors by the provisions of the Consolidation Act or the Political Code, were, under §§ 33 and 34 of the Act of April 18th, 1878, transferred to the Board of Election Commissioners in express terms, and it therefore follows that the third point made by appellants—that "the authority to cause a Board of Freeholders to be elected to frame a charter is vested in the city, or Board of Supervisors"—cannot be sustained.

But, in the view we take of the case, it is not necessary for us to determine what powers in respect to elections were vested in the Board of Supervisors of the City and County of San Francisco, under the provisions of the Consolidation Act and Political Code.

The provision of the Constitution (§ 8, art. xi,) is, in our opinion, sufficient for the purposes of this decision. It declares that "any city containing a population of more than one hundred thousand inhabitants, may frame a charter for its own government * * by causing a board of fifteen freeholders * * to be elected by the qualified voters of such city, at any general or special election."

The only condition imposed by the foregoing constitutional provision to make such election valid, is that the freeholders must be chosen at a general or special election, and in this case that condition was fulfilled.

It appears from the transcript that a proclamation was issued by the Governor for the election of a State Senator to fill a vacancy occurring in the Eighth Senatorial District, and that that election was ordered to be held on the same day on which the election of the fifteen freeholders took place. The election to fill such vacancy was a special election under § 1043 of the Po-

litical Code, which declares that " special elections are such as are held to supply vacancies in any office, and are held at such times as may be designated by the proper board or officer.

As has already been remarked, the Constitution authorizes any city containing a population of more than one hundred thousand inhabitants to frame a charter, by causing a board of fifteen freeholders to be elected by the qualified voters of such city, at *any general* or *special election.*

It is not pretended that the election in this instance was not fairly conducted, or that there was not a full expression of the public will at such election. Indeed, it appears that the vote for the Board of Freeholders was much larger than that cast for Senator, and it also appears that the respondent received at such election a very large majority of the popular vote. The honesty and fairness of the election are conceded, and it is simply claimed that there was no authority for holding it.

It is argued in the first place, that the power to call the election resided in the Board of Supervisors, and the point is also taken, that action on the part of the Legislature was essential to enforce and give effect to the provision of the Constitution. The first point has already been disposed of, and the second is not, in our opinion, well taken. Legislative action was not necessary to enable the inhabitants of the City and County of San Francisco to act, under § 8, art. xi, of the Constitution, in the matter of framing a charter. The Constitution nowhere provides either expressly or by implication for such legislative interference, and the construction placed upon the provision of the Constitution under discussion might result in entirely defeating its operation. If this ground can be sustained, it would result that hostile action, or even *non-action* on the part of the Legislature, would prevent the inhabitants of the city from exercising a power expressly given to them in clear and unmistakable language by the Constitution. It was manifestly the intention of §§ 8, 13, and 14, art. xi, as well as of § 25, art. iv, of the Constitution, to emancipate municipal governments from the authority and control formerly exercised over them by the Legislature, and this is the more apparent in view of the fact that the charter framed by the Board of Freeholders, and ratified by the vote of the people, cannot be amended by the Legis-

lature. It (the charter) shall be submitted to the Legislature for its approval or rejection *as a whole*, without power of alteration or amendment, and when so approved it cannot be amended except upon proposals submitted by legislative authority to the voters of the city and county.

In this connection, the language of the Supreme Court of Iowa appears applicable: "Upon considerations like this, the courts have held that the voice of the people is not to be rejected for a defect, or even a want of notice, if they have in truth been called upon and have spoken. In the present case, whether there was notice or not, there was an election, and the people of the county voted, and it is not alleged that any portion of them failed in knowledge of the pendency of the question, or to exercise their franchise." (*Dishon* v. *Smith, County Judge*, 10 Iowa, 218.)

We have arrived at the conclusion that the election of March 30th, 1880, should be declared valid, the more willingly for the reason that no possible injury can result from such a determination. The people of the City and County of San Francisco have, after a fair and full election, regularly and honestly conducted, expressed their wish that a charter should be prepared for their ratification, and the charter so prepared by the respondent and his associates must, before it can become a law, receive such ratification, and after that, the approval of the Legislature.

In our opinion the judgment of the Court below should be affirmed, and it is so ordered.

SHARPSTEIN, J., MYRICK, J., McKINSTRY, J., ROSS, J., and McKEE, J., concurred.

THORNTON, J., dissenting:

I dissent. By virtue of the provisions of section 8 of article xi of the Constitution of this State, a privilege is given to the City and County of San Francisco to frame a charter for its own government "consistent with and subject to the Constitution and laws of this State," by causing a board of fifteen freeholders, with the qualifications prescribed in the section, to

be elected by the qualified voters thereof at any general or special election, whose duty it shall be within ninety days, etc., to prepare and propose a charter for such city, etc.   The defendants claim to have been duly elected to prepare and propose the charter referred to, and this action is brought to test the validity of their election and their title to the office which they claim.

The case, then, turns on the validity of the election.   Is it valid ?

This election was held by virtue of an order of the Board of Election Commissioners of the City and County of San Francisco, constituted and organized under an act of the Legislature entitled, " An Act to regulate the registration of voters, to secure the purity of elections in the City and County of San Francisco," approved March 18th, 1878.   This order was made by a resolution of the board above mentioned, adopted on the 4th of March, 1880, which directed an election to be held on the 30th of the same month.   By order of this board, the Registrar of Elections published a notice for registration, to continue from the 5th of March to the 15th of March, 1880, and on the 19th of March, 1880, the board issued a proclamation of such election to be held on the day above mentioned, and notice was accordingly given.

The Board of Election Commissioners by its action fixed the day of election.   If they had such power the election is valid, if they did not have it the election is void.  ˙It is settled by repeated decisions of the Supreme Court of this State, that no election is valid where the time of holding it has not been fixed in advance by law.   The latest case on the subject is *Kenfield* v. *Irwin*, 52 Cal. 169.   The rule is thus clearly stated by the Court in this case.   " The time of holding an election, whether general or special, must be authoritatively designated in advance, either by law or by some means which the law has prescribed, otherwise the election is held without authority, and is ineffectual for any purpose."   The opinion further states that this rule is supported by a uniform line of decisions of this Court—and cites the following cases : *People* v. *Porter*, 6 Cal. 26 ; *McKune* v. *Weller*, 11 id. 49 ; *People* v. *Martin*, 12 id. 409 ; *Westbrook* v. *Rosborough*, 14 id. 180.   (See also *People* v. *Mathewson*, 47 Cal. 442, and *Sawyer* v. *Haydon*, 1 Nev. 78.)

Did then the Board of Election Commissioners have the power to fix the time at which such election was to be held? Their powers are derived entirely from the act of 1878, above cited. If we find no such power in the act, it does not exist. The portions of this act germane to the question are cited in the opinion of the Court. By its first section, such powers are given to the Board of Election Commissioners as were *then* vested in the Board of Supervisors of the city and county. An examination of the Consolidation Act and its amendments, and the Political Code, fails to disclose any such power in the Board of Supervisors on the 18th of March, 1878. No statute granting such power was brought to the notice of the Court on the argument. The §§ 33 and 34 of the Act of 1878, quoted in the opinion of the Court, confer no such power. Section 33 authorizes the Board of Election Commissioners to make all provision for carrying out the registration and election laws in the City and County of San Francisco. This refers to the laws then existing. It must be read together with the first section to arrive at the proper interpretation, and we find in the first section a restriction of the powers of the Board to such as were then vested in the Board of Supervisors. The same may be correctly stated as the meaning of the 34th section of the act. As we have seen, no law existed on the 18th of March, 1878, vesting any power to fix the day on which an election of any kind should be held in the Board of Supervisors, and it follows that no such power was vested in the Board of Election Commissioners.

In accordance with the rules laid down in the cases above cited, the election should be held void. What there is to take this case out of this rule we cannot conjecture, unless it can be maintained that the electors of the city of San Francisco as to the matter in question compose an autocracy independent of law and all legislative authority.

In the opinion of the Court, § 1056 of the Political Code is referred to. Admitting that this section was even in force in the City and County of San Francisco, by its terms it confers no power to appoint the day for an election, but merely prescribes what shall be done, where such power exists and is exercised. But it is a matter of grave doubt whether it ever was

in force in the city and county referred to, under the provisions of § 19 of the Political Code. (See subd. 1 of § 19.)

Is the power of the Board of Election Commissioners enlarged by § 8 of art. xi? We cannot perceive that it is. The grant of power there is to the city in its corporate capacity, and not to the Board of Election Commissioners. The grant is not in terms to any agency, whether consisting of a board, a person, or a number of persons. It is a grant to the city, to be exercised by it in a lawful mode. If an election is to be held, or anything else done under the grant, it must be in accordance with law.

We lay the more stress on the fact that this grant is made, by the express words of the Constitution, to the city, on account of the mode of legislation heretofore adopted in regard to the city. While the city is made a corporation by the Consolidation Act, it will be observed that in the Act of 1856, (Consolidation Act) and the acts supplementary and amendatory of it, the powers which would be styled corporate are vested in the Board of Supervisors.

The powers vested by the Act of 1878 in the Board of Election Commissioners are in their nature ministerial and executive. They merely pertain to the execution of the laws in existence. None of them are legislative. The power to appoint a time for holding elections is essentially legislative. It is an element in the policy of the State or community, and this policy is a matter on which the judgment of the law-making power should be and is to be exercised. Such matters are regulated by the Constitution or by some legislative authority. We say some legislative authority, because it may be by the local legislature of a municipal corporation. This delegation of power may be made by a general law. It is so treated in the Constitution. (See the following provisions: §§ 3, 4, 25, subds. 9, 11, of art. iv; § 20 of art. xx; § 10 of art. xxii.) Subdivisions 9 and 11 of art. iv place the subject of elections entirely under the control of the Legislature, with a single exception.

Now the city is a corporation of that character, whose powers are exercised through the medium of authorized officers or agents. It is not like a New England town, whose inhabitants come together in mass meeting, but in a mode fixed by law, to perform corporate acts.

The inhabitants of the city are not authorized by any law to perform a corporate act in a meeting of its inhabitants *en masse*, by whatever mode called together. As was said by Shaw, C. J., in *Warren* v. *Charlestown*, 2 Gray, 101: "The marked and characteristic distinction between a *town* organization and that of a *city* is, that in the former all of the qualified inhabitants meet, deliberate, act, and vote in their natural and personal capacities; whereas, under a city government, this is all done by their representatives." This is as true of an incorporated city in California as in Massachusetts.

Such a corporation can only act by its agents. Marshall, C. J., in *Clark* v. *Corporation of Washington*, 12 Wheat. 53, speaking of a power granted to the City of Washington, to authorize the drawing of lotteries for certain purposes, thus speaks of the manner in which the power is to be exercised: "A corporation aggregate can legislate within its prescribed limits, but can carry its laws into execution only by its agents." Again, in the same case, referring to the power granted, he said: "It is to be exercised like other corporate powers, by the agents of the corporation under its control."

This seems to be the general rule. In the various cases in which reference is made to the subject, the courts treat it as settled beyond contradiction. It is treated as an axiom, needing no authority to sustain it. In none of them is any authority cited. (See the following cases: *Dey* v. *Jersey City*, 19 N. J. Eq. 412; *Baltimore* v. *Poultney*, 25 Md. 18.) The rule is thus stated by Dillon in his work on Municipal Corporations: "Where there is a council or governing body, the inhabitants or voters in their natural capacity have no power to act for or bind the corporation, but the corporation must act, and can be bound only through the meeting of this body." (See 1 Dill. Mun. Cor. § 197; § 19, and cases there cited; see also § 208.)

The grant then being to the city, it must be. exercised by some authorized agent. By no express enactment, as we have seen, is power vested in the Board of Election Commissioners, nor do we see any grant to this body by implication. There is much more plausibility in the contention, that the power vests in the governing body of the corporation—the Board of Supervisors—and this last would seem to be the proper agency through

which the power granted is to be exercised, in accordance with the rule as laid down by Mr. Dillon. In the case of the *Central Bridge Corporation* v. *The City of Lowell*, 15 Gray, 116, certain arrangements were, by an act of the Legislature, authorized between the two corporations, to be valid and binding when the act was accepted by them, " at a legal meeting of the respective corporations." The act came before the Supreme Court in Massachusetts to be interpreted, and the Court, by Shaw, C. J., said: "That the acceptance by the Mayor, and Aldermen, and Common Council of the city of Lowell, in due form, was a legal acceptance by the corporations, because it was done by their legally constituted representatives. All the powers of the city as a municipal corporation were vested in the City Council, except those, if any, specially and expressly reserved by the charter to be exercised by the people."

In the case of the City and County of San Francisco, the powers of legislation which pertain to it as a corporation are for the most part vested in the Board of Supervisors. And it would seem that the power to fix the day for any election, which is in its nature legislative, belongs to the Board of Supervisors.

In executing this grant to the city, it cannot be denied that all the powers necessary to its proper execution vest in the corporation. A large discretion is conferred on the corporate authority as to the mode in which this power is to be executed. (*McCullough* v. *State of Maryland*, 4 Wheat. 409.) It may be justly held that the proper interpretation of this grant of power by the Constitution is to empower the corporate authorities, whoever they may be, to exercise this discretion. It certainly pertained to some legislative authority to determine in advance whether the election should be held on the day of a general or special election; whether the freeholders should be elected by general ticket, or by districts; if by districts, how many districts there should be. A further matter to be considered and which would seem to be comprehended in a proper execution of the power, is this: whether or not the delegates elected should reside within the limits of the district from which such delegate or delegates are elected, or whether a delegate residing in any portion of the city may be chosen. On all these matters

the legislative judgment should be exercised, and the city, by its proper authorities, allowed the privilege of considering and adopting them or not, as may seem to them best. Certainly, all these matters are embraced in the grant.

The course resorted to in ordering the election, proceeds on the assumption that § 8 of art. xi is self-executing. The above considerations show that it is not.

In *Austin* v. *G. C. & S. F. R. R. Co.* 45 Tex. 234, a section of the Constitution of that State came before the Supreme Court to be construed. The section is in these words: "The inferior courts of the several counties of this State shall have the power, upon a vote of two-thirds of the qualified voters of the respective counties, to assess and provide for the collection of a tax upon the taxable property, to aid in the construction of internal improvements, provided that such tax shall never exceed two per cent. upon the value of such property."

The Legislature, to execute this provision of the Constitution, had enacted a statute. It was contended that this statute was unconstitutional, on the ground that the section quoted above determined the power and authority, and also the character of the aid to which it relates, and the manner and form in which it is to be extended. The Court say this as to the manner and form in which the power is to be executed: "Now, while it is beyond question that the counties in this State, when authorized by a vote of two-thirds of the qualified voters, may aid in the construction of internal improvements, certainly the manner of doing so is not attempted to be defined or settled. Shall it be done by a direct donation of money or property; by the loan of the credit of the county; by the indorsement of the bonds or contracts of the company or parties engaged in such work, or by the county becoming a stockholder or participant in the enterprise? Aid might be given in either of these ways, or in various others which might be suggested. The manner in which it shall be given, and the conditions and stipulations upon which it is done, are unquestionably left to be determined by the municipal authorities at their own discretion, or under the guidance and direction of general or special legislation. If the former is the correct conclusion, as is insisted by one of the counsel for appellees, there is no force in this objection. In our

opinion, however, the sounder conclusion is, that where there is a grant of power in the Constitution to a department of government, or to a constitutional or statutory officer, or tribunal, without defining the manner and form on or by which it is to be exercised and carried into effect, the Legislature may legitimately prescribe reasonable rules by which this may be done." (45 Tex. 264–5.)

The above remarks are applicable to the manner and form in which the power here given to the city is to be exercised.

The Court further said : "·And though such power may not be taken away by the Legislature, and should it fail or refuse to legislate so as to provide for the efficient use and exercise of the power, the department, officer, or tribunal to whom it is delegated might possibly act in accordance with its own discretion, yet when the Legislature has made reasonable and appropriate provision for its proper exercise, it should and will be exercised in conformity with such provisions."

It may be admitted that when the legislative authority fails to be exercised, (reference is here made to the State Legislature) the corporation may proceed to act in accordance with its own discretion, still that discretion should be exercised in the usual legislative mode, by ordinance or resolution passed in accordance with the provisions of the existing law. The corporate authority alone should act. And as such proceeding would be a corporate act, it should be performed by the governing body of the corporation ; and not by any irregular or unauthorized movement of the electors residing within the corporate limits.

If such an act could be done by the inhabitants of the city who are qualified to vote, surely it should be done in some mode bearing the semblance of a legal method. If by a meeting, like the town meetings of the New England system, it should be called and held in accordance with some rules prescribed in advance. As to the New England towns, and the manner in which their meetings are held, see 1 Dillon on Mun. Corp. § 11, and notes; §§ 204–7, and notes. The times at which such meetings are held are fixed by law, and their method of procedure—and the legal provisions are strictly enforced in passing on the validity of their proceedings. The cases cited in the notes referred to indicate this.

It is not necessary, however, to decide whether the power to fix the day for holding this election pertained to the Legislature of the State or the Board of Supervisors. It is sufficient to hold, that the power was not vested in the Board of Election Commissioners.

It is a matter of no importance that a large vote was cast at the election of the 30th of March. This adds nothing to the validity of the election. Nor is it a matter to be considered that the election was fairly held. If the election was illegal, it was so far unfair as to demand judicial condemnation. In such a case it should no more be approved than if it had been fraudulently conducted.

The foregoing considerations lead to the conclusion that the election of the defendants was invalid, and, therefore, in my opinion, the judgment of the Court below should be reversed.