[S. F. No. 20.   Department One.—February 21, 1896.]

# CITY AND COUNTY OF SAN FRANCISCO, APPEL-LANT, *v.* WILLIAM BRODERICK, RESPONDENT.

ELECTION COMMISSIONERS OF SAN FRANCISCO—POWER OVER ELECTION EX-PENSES—LIMIT FIXED BY SUPERVISORS NOT BINDING.—The election commissioners of San Francisco have exclusive power over the conduct, management, and control of elections therein, and demands on the treasury authorized or allowed by them for the purpose of carrying out the registration and election laws have the same force and effect as if authorized or allowed by the board of supervisors, nor are they bound by any limit fixed by the board of supervisors as its estimate of regis-tration and election expenses to be paid out of the general fund; nor does the fact that its estimate is too low deprive the holders of claims for the excess above such estimate, which have been allowed by the elec-tion commissioners, of their right to payment so long as there is money in the treasury applicable thereto.

ID.—ORDINANCE OF SUPERVISORS—DUTY OF AUDITOR.—It is not compe-tent for the supervisors of the city and county of San Francisco, by ordinance or resolution, to restrict the amount to be paid for election expenses, nor to restrict the auditor in the exercise of his office, nor to absolve him from the performance of his duty to audit demands upon the treasury which have been approved and ordered paid by the proper board or officer, and the holder of such a demand has the right to the enforcement of this duty.

ID.—FAVORITISM BY AUDITOR—INSUFFICIENT FUNDS.—The auditor is not justified in showing any favoritism by auditing the claim of one person in preference to that of another, upon the theory that there may not be sufficient money in the treasury to meet all demands upon it.

ID.—CITY AND COUNTY—CHOICE AMONG CREDITORS—INJUNCTION AGAINST AUDITOR.—The city and county of San Francisco can in law have no choice as to which of its creditors shall first be paid; and it cannot by ordinance or resolution restrain the auditor from auditing demands against it which have been properly allowed and ordered paid.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. CHARLES W. SLACK, Judge.

The facts are stated in the opinion of the court.

*W. C. Graves*, for Appellant.

It is the duty of the board of supervisors to levy the amount of taxes for state, city, and county purposes, said amount to be such as the board may deem sufficient to provide for the payment of all demands upon the

treasury authorized by law to be paid out of the same. (Consolidation Act, Worley's ed., 17.) The word "deem" means to pass judgment. (Webster's Dictionary.) Illegal, unlawful, or improper acts of public officers may be restrained when they would produce irreparable injury, or when such remedy is necessary to prevent a multiplicity of suits. (Pomeroy's Equity Jurisprudence, sec. 1345; Dillon on Municipal Corporations, secs. 908, 915; *Oakland* v. *Carpentier*, 13 Cal. 549.) The auditor is the proper party to proceed against. (Consolidation Act, secs. 84, 87.)

*Crittenden Thornton*, and *F. H. Merzbach*, for Respondent.

Prior to the creation of the board of election commissioners the powers and duties at present exercised by that board were vested in the board of supervisors. They were transferred to the board of election commissioners by the act of April 18, 1878. (Stats. 1878, p. 299; *People* v. *Hoge*, 55 Cal. 612.) The claims alleged to be in the hands of the auditor rest upon the same basis of reason and principle as "salaries fixed by law." (*Cashin* v. *Dunn*, 58 Cal. 582; *Welch* v. *Strother*, 74 Cal. 415; *Lewis* v. *Widber*, 99 Cal. 412.) The compensation of election officers, although small in each individual case, is fixed by statute with the same degree of certainty as to amount as that of the mayor or county clerk or a deputy in any office of the municipal government. (Stats. 1877–78, p. 299.) As long as any moneys remain unexpended in the general fund of the city and county treasury they may be lawfully applied to the payment of liabilities incurred for holding general elections. (*Gibbs* v. *Bartlett*, 63 Cal. 117.)

Harrison, J.—At the time of levying the annual tax for the fiscal year ending June 30, 1895, the board of supervisors of the city and county of San Francisco fixed the sum of one hundred and fifty thousand dollars

as its estimate of the registration and election expenses for the general election to be held in November, 1894, and set apart and appropriated out of the general fund that amount of money for that purpose. Subsequently, they adopted an ordinance purporting to limit the expenditures for this object to this amount, and directed the auditor not to audit, and the treasurer not to pay, any demand in excess thereof. In holding and conducting said election, however, the board of election commissioners and the registrar of elections incurred liabilities and charges against the city and county in a sum of upwards of forty thousand dollars in excess of the amount thus set apart, and made out and delivered warrants therefor on the general fund to the parties claiming to be entitled to the same. After warrants amounting to one hundred and fifty thousand dollars had been paid, the plaintiff herein commenced the present action against the defendant, who is the auditor of said city and county, to restrain him from auditing and allowing or approving any warrant or warrants made out by said board of election commissioners, or by said registrar of elections, in excess of said sum of one hundred and fifty thousand dollars, upon the ground that after that sum had been set apart for this purpose, and while there was other money in the treasury to the credit of the general fund, exclusive of said sum of one hundred and fifty thousand dollars, it had, upon the faith of said moneys in excess of said sum, entered into contracts with divers persons for necessary and lawful supplies for its use, and, if the aforesaid warrants in excess of one hundred and fifty thousand dollars were paid, the general fund would be so depleted that there would be no funds with which to pay the claims of said contractors; that said contractors had protested against the payment of said warrants, and had threatened to sue the plaintiff upon their contracts, and would vex and harass the plaintiff with a multiplicity of suits if said warrants were allowed and paid. To this complaint the

defendant demurred, and his demurrer having been sustained, judgment was rendered in his favor, from which the plaintiff has appealed.

Section 1 of the act of March 18, 1878 (Stats. 1878, p. 299), declares: "The conduct, management, and control of elections, and matters pertaining to elections, in the city and county of San Francisco, is hereby taken from the board of supervisors and vested in a board of five commissioners, . . . . which board is hereby invested with all the powers and charged with all the duties as to matters pertaining to elections now vested in said board of supervisors." Other sections of the act point out the duties of this board of election commissioners and of the registrar, making it incumbent upon them to select rooms or places for registration and polling places; to designate the officers of election, and in certain instances fix their compensation therefor, "to be paid out of the treasury of said city and county, in the manner now provided by law for the payment of such services"; to provide books, blanks, and stationery and other matters requisite for the performance of their duties; and by section 1216 of the Political Code they are to exercise all the powers and duties which by that code are conferred upon county clerks and other officers in relation to matters of election and polling places. Section 33 of the act of 1878 declares: "All provisions for carrying out the registration and election laws in said city and county of San Francisco shall be made by the board of election commissioners, and demands on the treasury authorized or allowed by them for such purposes shall have the same force and effect as if authorized or allowed by the board of supervisors."

It is not claimed by the appellant that the board of election commissioners had incurred any unnecessary expenses, or allowed any demands upon the treasury that were not proper claims for expenses incurred in the discharge of their duties under the statutes by virtue of which they acted, but it contends that the estimate and appropriation of one hundred and fifty thousand

dollars by the board of supervisors is a limitation upon the amount that may be expended for that purpose. The transfer to the board of election commissioners of the conduct, management, and control of elections in San Francisco gives to this board the same power and authority to incur expenses in reference thereto, and to make the same a charge against the city, as was previously held by the board of supervisors, and the provision in section 33, that " demands on the treasury authorized or allowed by them for such purposes shall have the same force and effect as if authorized or allowed by the board of supervisors," gives to their demands the same validity and right to immediate payment from the funds of the city as if their payment had been directed by the board of supervisors.

The provision in section 71 of the consolidation act requiring the board of supervisors, when making the levy of taxes, to apportion and divide the taxes to be collected to certain specific funds, " according to the estimate of said board of the necessities of said funds," is limited to an apportionment of the taxes to those funds which are therein designated, viz., " corporation debt fund, general fund, school fund, street light fund, and street department fund," and does not confer authority to subdivide those funds, or either of them, and restrict the several subdivisions to the objects for which they may be indicated. The third subdivision of the section, which declares that " the general fund shall be applied and used for the payment of all sums authorized by law to be paid out of the general fund, and not otherwise provided for in this act," implies that the whole of the general fund shall be so applied and used, and that the holder of any claim against the city which is payable out of the general fund is entitled to have his claim audited, and also to have it paid, if at the time of presentation for payment there is sufficient money therefor in the general fund. Section 76 of the consolidation act declares that " the general fund consists of all moneys in the treasury not designated and set apart

by law to a specified use, and of the overplus of any special fund remaining after the satisfaction of all demands upon it"; and in section 83 it is declared that " the term 'law' or ' laws,' as used in this act, is never to be understood as applicable to any regulation of the board of education, or of the board of supervisors, but only applicable to the constitution, and the laws made or adopted by the legislature in pursuance thereof."

The estimate which the board of supervisors is directed to make of the necessities of the several funds, as the basis of the tax which they will levy, is not a conclusive determination of the amount that may be expended for these several necessities, and, although the failure to levy a tax which shall raise a sufficient amount of money for these needs will prevent the expenditures, yet, if the money has been collected and is in the treasury, applicable thereto, its expenditure or disbursement is not limited by the amount of the estimate.   In the present case the board of supervisors were required to estimate the expenses that would be incurred at the general election for the year 1894, and in the exercise of their judgment they deemed it necessary to provide the sum of one hundred and fifty thousand dollars therefor. As the incurring of these expenses was not under their control, it would not be competent for that body to determine the amount that should be expended, and their estimate would be at most only an approximate opinion of the amount of the expense, nor does the fact that their estimate was too low deprive the holders of claims for the excess above this estimate of the right to payment, so long as there is money in the treasury applicable thereto.   (See *Cashin* v. *Dunn*, 58 Cal. 582; *Welch* v. *Strother*, 74 Cal. 415.)

The duties of the defendant are defined in the consolidation act and other statutes, and it is not competent for the board of supervisors, by any ordinance or resolution, to restrict him in the exercise of his office, or to absolve him from the performance of these duties.   If

a demand upon the treasury has been approved and ordered paid by the proper board or officer, and is presented to him in proper form, and he has satisfied himself that the money is legally due and remains unpaid, and that payment thereof from the treasury is authorized by law, it becomes his duty to audit the demand, and the holder of the demand has a right to the enforcement of this duty. He is not justified in showing any favoritism by auditing the claim of one person in preference to that of another, upon the theory that there may not be sufficient money in the treasury to meet all demands upon it; and, as the appellant herein can in law have no choice as to which of its creditors shall first be paid, it cannot restrain the defendant from auditing demands against it which have been properly allowed and ordered paid.

The judgment is affirmed.

VAN FLEET, J., and GAROUTTE, J., concurred.