Newman, J.
Among the-powers conferred upon a municipal corporation, the exercise of which may be provided for by council, is the power to take and authenticate a census of the municipality. Section 3625, General Code. Acting under this authority, the council of the village of East Youngstown caused a census to be taken. The same was duly authenticated and showed the population on October 29, 1913, to be 7,021. The purpose of this census, which is unimportant so far as this case is concerned, was to ascertain the number of saloon licenses to be issued in the year, it being provided *224 in the liquor-license law that any official census taken within the year next preceding that for which licenses are granted may be a basis in determining the number of licenses. From the record before us it appears that the proceedings had in the taking and authentication of this census were regular and in conformity with law, and it was therefore a legal and official census.-
It was the holding of the court of appeals, and it is the contention of counsel for defendant in error, that by reason of the population of East Youngstown being shown by this official census to be 7,021 on October 29, 1913, it became a city on that day and was a city on November 4, 1913, when the election was held therein. If this be true, the election of plaintiff in error as marshal on that date was of no force or effect for the reason that a marshal is not a proper officer of a city.
If Section 1 of Article XVIII of the Constitution, adopted September 3, 1912, effective November 15, 1912, which classifies municipalities into cities and villages, is self-executing so as to change ipso facto from a village to a city a municipality which is shown by an official census to have a population of 5,000 or over, then the holding of the court of appeals and the contention of counsel are correct.
Prior to the adoption of this constitutional provision in 1912, the classification of municipalities was in the hands of the legislature. Its classification at times was most complex and special in its nature. In 1902 the abuse of this power of classification had grown to such an extent that this court in State, ex rel., v. Jones et al., 66 Ohio St., 453, *225 held that the then existing legislation having to do with the classification of municipalities was invalid and repugnant to the constitutional provision prohibiting the general assembly from passing special acts conferring corporate powers. Immediately following this decision a municipal code was adopted in which municipalities were placed in two classes only, cities and villages. Although the legislature from that time kept within constitutional limitations, yet the constitutional convention of 1912, in order to make it impossible for the legislature to resort to a complex classification and that the classification of municipalities should be limited to cities and villages, placed the matter beyond the ■power of the legislature and made it a part of the fundamental law of the state. The convention deemed it advisable to adopt the basis of population which had obtained in this state for ten years. The constitutional provision in question reads:
“Municipal corporations are hereby classified into cities and villages. All such corporations having a population of five thousand or over shall be cities; all others shall be villages. The method of transition from one class to the other shall be regulated by law.”
What is the meaning of the language “the method of transition from one class to the other shall be regulated by law” ? Counsel for defendant in error are insistent that “the method of transition” cannot mean the simple fact of a municipal corporation obtaining or losing population; that it must refer to the way by which the operation of the *226 law passes from one set of officers to another; to the succession of the officers of one class to the officers of another class; that it does not refer to the method by which the population of the municipal corporation, is ascertained, for this, they say, is a fact to be established in any proper or legal way, as are other facts.
It is clear to us that the constitutional convention when it framed this provision, and the people when they adopted it, mindful of the abuse by the legislature of its power of classification, were concerned solely as to classification. The manner of the assignment of the different municipalities to the classes to which they belong they left to be regulated by law. There never had been objection to or criticism of the method used by .the legislature in determining the population of a municipality and there was no evil to be corrected in that respect. The federal census had been the test of population, to which no objection successfully has or can be made.
When it came to the framing of the constitutional provision under consideration there was omitted therefrom certain language which had been used in Section 3497, General Code, the statute classifying municipalities. That section is as follows:
“Municipal corporations, which, at the last federal census, had a population of five thousand or more, shall be cities. All other municipal corporations shall be villages. Cities which, at any future federal census, have a population of less than five thousand shall become villages. Villages which, *227 at any future federal census, have a population of five thousand or more, shall become cities.”
It is to be observed that the words “at the last federal census” do not appear in the constitutional provision, and it is the contention of counsel that this statute is therefore inconsistent and must fall.
As we view it, this language was omitted because it was deemed unimportant by the framers of the constitution how the transition from one class to •the other should take place. They were willing to leave this to the legislature. While “the last federal census” had been the test of population for years, yet the method of transition was to be regulated by law. The legislature could use as a basis either the federal census or any official census which it saw fit to adopt.
The method of transition, we think, has reference to the time as well as the manner of transition. Our attention is called to the fact that in this constitutional provision “having” is used, and counsel argue that by this it was intended that whenever it appears by any official census that a municipal corporation has the requisite population, it instantly becomes a city. We cannot give it that interpretation. It is a mere form of expression and has no legal import. The word “are” is used in the first sentence in the provision, and it can be claimed with as much force that by the use of this word the constitutional framers intended a classification of the municipalities of this state but once and for all time.
Counsel cite cases which they claim support their contention. But the constitutional provisions be *228 fore the court in those cases differ from the one here. They do not contain the language “the method of transition from one class to the other shall be regulated by law,” or any language which authorizes action on the part of the legislature. For example, the constitution of California, Section 8, Article XI, read:
“Any city containing a population of more than one hundred thousand inhabitants may frame a charter for its own government, consistent with and subject to the constitution and laws of this state.”
In People v. Hoge, 55 Cal., 612, it was held that legislative action was not necessary to enable the inhabitants of a certain city to act under this provision in the matter of framing a charter, but the court in that case called attention to the fact that the constitution nowhere provided either expressly or by implication for such legislative interference.
Section 3498, General Code, provides:
“When the result of any future federal census is officially made known to the secretary of state, he forthwith shall issue a proclamation, stating the names of all municipal corporations having a population of five thousand or more, and the names of all municipal corporations having a population of less than five thousand, together with the population of all such corporations. A copy of the proclamation shall forthwith be sent to the mayor of each municipal corporation, which copy shall forthwith be transmitted to council, read therein and made a part of the records thereof. From and after thirty days after the issuance of such proclamation each municipal corporation shall be a city or vil *229 lage, in accordance with the provisions of this title.”
Then follows Section 3499, which provides that officers of a village advanced to a city, or of a city reduced to a village, shall continue in office until succeeded by the proper officers of the municipal corporation elected at the next regular election, and the ordinances thereof not inconsistent with the laws relating to the municipal corporation shall continue in force until amended or repealed.
It is under this last section that the defendant in error claimed the right to continue in office, the village of East Youngstown having been advanced to a city, according to his contention, when the population was shown by the census of October 29,1913, to be more than 5,000. But we hold that Sections 3497 and 3498 are not inconsistent with the constitutional provision under consideration. They were in force when this provision took effect and will continue in force until amended or repealed. This is true under the doctrine announced in Cass v. Dillon, 2 Ohio St., 607, and again under the schedule to the constitutional amendments of 1912, which, after fixing the time when the amendments adopted shall be effective, provides that all laws then in force not inconsistent therewith shall continue in force until amended or repealed.
If these statutes are repealed they are repealed by implication, which repeals are not favored. As held in The State v. Cameron et al., 89 Ohio St., 214, before a statute is so repealed the repugnancy must be necessary and obvious, and if by any *230 fair course of reasoning the law and constitution can be reconciled the law must stand.
Our conclusion is that Section 1, Article XVIII, of the Constitution is not self-executing. It indicates a basis of classification, but the time and manner of the transition of a municipal corporation from one class to the other is to be regulated by law.
There are then in the General Code these statutes which regulate the transition of municipalities from one class to the other. Applying them here, the municipal corporation of East Youngstown, according to the federal census of 1910, was a village. This will be its status until it appears from a federal census that it has a population of 5,000 or more and the result of such federal census has been officially made known by the secretary of state and such steps taken as are required by Section 3498, unless under the authority conferred upon it by the constitutional provision the general assembly sees fit to change the method of transition.
Counsel for plaintiff in error challenge the judgment of the court of appeals upon the further ground that the relator relinquished possession of the office of marshal and turned over the keys to the respondent; that from January 1, 1914, the relator never undertook to exercise or perform any duties of the office and that up until the time the petition was filed in the case he made no demand in regard to performing the duties of the office. In view of our holding on the other branch of the case it becomes unnecessary to pass upon this proposition.
*231 For the reasons we have given the judgment of the court of appeals is reversed, and upon the conceded facts in the case judgment is rendered for plaintiff in error.

Judgment reversed and judgment for plaintiff in error.

Nichols, C. J., Johnson and Wanamaker, JJ., concur.
Donahue, J., concurs in the first and third propositions of the syllabus and in the judgment, but dissents from the second proposition of the syllabus.
Jones and Matthias, JJ., dissent from the second and third propositions of the syllabus and from the judgment.