[S. F. No. 10824. In Bank.—September 18, 1923.]

THOMAS A. F. ASHE, Petitioner, v. J. H. ZEMANSKY, as Registrar of Voters of the City and County of San Francisco, et al., Respondents.

[1] ELECTION LAW—USE OF VOTING MACHINES—CONSTITUTIONAL LAW. Section 6 of article II of the constitution does not prevent the use of voting machines in less than an entire subdivision, such as a city, but this prohibition relates only to the legislature and not to the determination of powers conferred by a charter.

[2] ID.—SAN FRANCISCO CHARTER—POWER OF ELECTION COMMISSIONERS. The adoption of voting machines comes under the general authorization contained in section 1 of chapter 1, article XI, of the charter, giving the board of election commissioners control "of all matters pertaining to elections in the City and County of San Francisco."

[3] ID.—CONDUCT OF ELECTIONS.—As the charter of the city and county of San Francisco expressly provides that the board of election commissioners shall have exclusive jurisdiction over the

---

1. Use of voting machine as violation of constitutional requirement that all elections shall be by ballot, notes, 2 Ann. Cas. 840; 5 Ann. Cas. 864; 9 Ann. Cas. 275; 12 Ann. Cas. 474; 7 L. R. A. (N. S.) 621; 24 L. R. A. (N. S.) 188.

subject of the conduct of elections and of all matters pertaining to elections, and the adoption and use of voting machines clearly comes within this branch of municipal authority, it follows that the election commissioners, having determined to use voting machines, the charter must be looked to to ascertain the method of conducting the election, and as the charter in turn refers to and adopts for such occasions the general laws of the state, such general laws must be followed under these circumstances.

[4] ID. — POWER OF ELECTION COMMISSIONERS — ADOPTION OF VOTING MACHINES IN PART OF PRECINCTS.—In the absence of an express provision requiring voting machines to be used in all the precincts of the city and county of San Francisco in order to change the method of conducting the election and counting the ballots and declaring the result, and there being no contention that the board of election commissioners were moved by any improper motives in adopting the number of voting machines that they have adopted, or any suggestion that this plan is a mere subterfuge to change the method of conducting the elections, the board of election commissioners had the right to exercise their discretion in adopting a less number of voting machines than the entire number necessary to put a machine in each voting precinct.

APPLICATION for Writ of Mandate to require the Registrar of Voters and Board of Election Commissioners of the City and County of San Francisco to print the municipal election ballots and to prevent the use of voting machines. Writ denied.

The facts are stated in the opinion of the court.

Cameron H. King for Petitioner.

Robert W. Harrison for Respondents.

George Lull and Charles S. Peery, *Amici Curiae*.

WILBUR, C. J.—The petitioner, a taxpayer of the city and county of San Francisco, prays for a writ of mandate directed to the respondent, who is the registrar of voters of the city and county of San Francisco, requiring the respondent to print the ballots for the coming municipal election to be held in November, in accordance with the charter provisions of the charter of the city and county of San Francisco (art. XI, c. 2, sec. 19 of the charter of the city and county of San Francisco). He alleges that

the board of election commissioners and the respondent have determined to conduct the election in accordance with the general laws of the state of California, purporting to act under and in pursuance of section 14 of chapter 2, article XI, of the charter of the city and county of San Francisco, amended by the people of San Francisco in 1922 and approved by the legislature in 1923. This section of the charter as thus amended reads as follows: "In the event of the use of voting machines the arrangement of the ballot, the counting of the vote, the canvass of returns and the determination of the result shall be governed by the general laws of the state."

It is alleged that the board of election commissioners have adopted a resolution providing for the purchase and use of fifty-two voting machines within the city and county of San Francisco, which contains over six hundred precincts.

The charter of the city and county of San Francisco nowhere expressly authorizes the use of voting machines, nor does it expressly confer jurisdiction upon the board of supervisors or the board of election commissioners to adopt voting machines. The respondent predicates the authority of the board of election commissioners to act in the adoption of the voting machines upon section 1 of article XI, chapter 1, which reads as follows: "The conduct, management, and control of the registration of voters, and of the holding of elections, and of all matters pertaining to elections in the city and county, shall be vested exclusively in and exercised by a Board of Election Commissioners, consisting of five members, who shall be appointed by the Mayor, and shall hold office for four years. . . . "

Section 14 of this article, as originally adopted, was as follows: "In the event of the use of voting machines, the ballot shall be arranged on the machines in the same form in each Assembly district as provided for the printed ballot."

Under this section of the charter as originally adopted the use of the voting machines would not have interfered with the general system of voting established by the charter, namely, a system of preferential voting by which the voter indicated his first, second, and third choice for each office. It was provided that in the canvass of the votes of such an election the second and third choice should in certain

events be counted in favor of the candidate for which said choice was expressed. This method of voting and of canvassing the returns is utterly at variance with the general system established in the state by which each voter expresses his choice for an individual candidate without any expression of any second or third choice.

After the adoption of the preferential system of voting in the San Francisco charter it was found that only about five to seven per cent of the voters expressed a second or third choice for any candidate. It was the indifference of the voters to this method of expressing their second and third choice that led, no doubt, to the ready adoption of the amendment to section 14 by which it is provided that in the event of the use of voting machines the general laws of the state should be followed in the determination of the result of the election, for it had been ascertained that no voting machine was manufactured whereon the voter could express a second and third choice.

[1] We may dismiss the first point made by the petitioner with merely a passing observation. The contention is that section 6 of article II of the constitution would prevent the use of voting machines in less than an entire subdivision, such as a city, but this prohibition relates only to the legislature and not to the determination of powers conferred by a charter.

The most serious question presented, however, is as to the power of the board of election commissioners. It is urged that voting machines for use in municipal elections could only be adopted by the people by charter amendment. The most obvious difficulty with this contention is that it deprives section 14 of article XI of the charter of all force whatever. If there was no authority in the city or any of its officials to use voting machines there was no occasion whatever for providing for the consequences of the use of such machines, for if the machines could only be authorized by the amendment to the charter, at the time the charter was amended, it could equally well be provided what the effect of their use should be. It would seem clear that the people, in adopting the charter amendment in 1922, article XI, section 14, contemplated that either the board of supervisors, who constitute the legislative body of the city, or the board of election commissioners, either under the charter

or when thereto authorized by the state legislature, might adopt voting machines for use at municipal elections, and it is our duty to give some effect to this amendment to the charter if it is possible so to do.

At first blush it would seem that the far-reaching consequences resulting from the use of voting machines as provided by article XI, section 14, should not come within the jurisdiction of an administrative body which merely controls the conduct of elections. But calling the board of election commissioners an administrative body does not solve the problem, because if they have legislative powers under the express provisions of the charter, the fact that their ordinary duties are those of an administrative character would not detract from the plain mandate of the charter, for the people in adopting a charter are not required to separate the judicial, legislative and executive departments of the government, but may adjust the municipal affairs provided for by the charter in any way that is satisfactory to themselves. [2] It is clear that the adoption of voting machines comes under the general authorization contained in section 1 of chapter 1, article XI, of the charter, giving the board of election commissioners control "of all matters pertaining to elections in the City and County of San Francisco." The adoption of voting machines is clearly a "matter pertaining to elections" in the city and county of San Francisco, and for that reason it would seem to be clear that if there is anywhere in the charter authority for a municipal officer or body to adopt voting machines, such power would be vested in the board of election commissioners, and this notwithstanding the fact that the general legislative body of the city is the board of supervisors (see *People ex rel. Taylor* v. *Board of Election Commrs.,* 54 Cal. 404; *People* v. *Hoge,* 55 Cal. 612; *Gibbs* v. *Bartlett,* 63 Cal. 117; *San Francisco* v. *Broderick,* 111 Cal. 302 [43 Pac. 960]).

In determining the power of the board of election commissioners it is well to note that they not only act in conducting elections under the charter of the city and county of San Francisco, which are purely municipal affairs, but also act in the conduct of all other elections held in the city and county of San Francisco. In 1923 the legislature of the state adopted a law authorizing boards of election

commissioners throughout the state, including the board of election commissioners of the city and county of San Francisco, to adopt voting machines for use at the general election. This statute also purports to authorize the use of voting machines at municipal elections, notwithstanding prohibitions contained in the charters of chartered cities. It is conceded, however, that this part of the legislation is void, as under the constitution municipal elections are municipal affairs which can be conducted in accordance with the charter provisions, if there are such, regardless of statutory provisions to the contrary.

Notwithstanding the fact that the state legislature could not directly authorize or require the municipal authorities of San Francisco to conduct a municipal election in a method violating the terms of their charter, it is nevertheless true that they had the authority to authorize the board of election commissioners of San Francisco to use voting machines at general elections. We may take judicial notice of the fact that these machines are complicated and expensive and that if the city and county of San Francisco acquires voting machines in order to conduct general elections, they would find themselves with these machines on hand when they desired to conduct municipal elections. Under such circumstances it would not seem unreasonable that voting machines should also be used at municipal elections.

The difficulty arises from the extensive and fundamental changes in the system of voting due to the use of the voting machines, but the answer to this difficulty lies in the fact that the extensive changes resulting from the use of voting machines are provided for by the charter itself. The charter provides that its whole system of municipal voting shall be changed and the general system in use throughout the state shall be effective within the city and county of San Francisco in the event that voting machines are used. The charter does not undertake to place the authority to use voting machines in any different municipal body than the one which would have exercised that power previous to the amendment and this it is clear was the board of election commissioners. [3] While we would ordinarily look to the legislative authority of the city for determination of a question involving such extensive changes in the method of conducting municipal elections, we are met in the charter

by the express provision that the board of election commissioners shall have exclusive jurisdiction over the subject of the conduct of elections and of all matters pertaining to elections and the fact that the adoption and use of voting machines clearly comes within this branch of municipal authority. It follows that the election commissioners having determined to use voting machines, we must look to the charter to ascertain the method of conducting the election under such circumstances. The charter in turn refers us to and adopts for such occasions the general laws of the state and the respondent must follow such general laws under these circumstances.

We have not thus far disposed of the suggestion that the use of voting machines in only one-twelfth of the precincts of the city ought not to determine the character of the ballot and method of conducting elections in the entire city. It is conceded that if voting machines are used at all they cannot be used to register second and third choice and this fact must be considered in determining the intent of the people in adopting the amendment to the charter providing for the use of voting machines. It is clear, also, that the expense of voting machines is so great and it is probable that the difficulty of procuring them in large numbers is also great, that we are justified in assuming that the voters of the city contemplated the use of voting machines in some number of precincts less than the entire number in the city and county. If this be true, of course, there is no question but what the registrar, in view of the determination of the board of election commissioners to use fifty-two machines, must print the ballot in accordance with the state law.

[4] In the absence of an express provision requiring voting machines to be used in all the precincts of the city in order to change the method of conducting the election and counting the ballots and declaring the result, and in the absence of any contention that the board of election commissioners were moved by any improper motives in adopting the number of voting machines that they have adopted, and in the absence of any suggestion that this plan is a mere subterfuge to change the method of conducting the elections, we think it clear that the board of election commissioners could exercise their discretion in

adopting a lesser number of voting machines than the entire number necessary to put a machine in each voting precinct.

Petition denied.

Lennon, J., Seawell, J., and Kerrigan, J., concurred.

RICHARDS, J., *pro tem.*, Concurring.—I concur in the foregoing conclusions but not in much of the reasoning which supports it. By the terms of the San Francisco charter prior to the amendment of section 14 of chapter 11, article XI thereof, adopted by the people in 1922 and approved by the legislature in 1923, the use of voting machines in municipal elections was permitted and might have been provided for by whatever municipal body had been invested by the charter with control over "all matters pertaining to elections." The board of election commissioners was that body according to the express terms of section 1, chapter 1, article XI of the charter, and it seems to me beyond question that if the election commissioners, prior to said charter amendment of 1922, could have found a model of voting machine which would have provided for preferential voting, or, in other words, had been so constructed that "the ballot shall be arranged on the machine in the same form in each assembly district as provided for the printed ballot" the election commissioners would have had power to install such voting machines, and their act in so doing would have been merely an administrative act. It was probably the fact that such voting machines were not obtainable and it may be not possible of construction that led to the amendment of the charter in 1922, by that amendment the people of San Francisco did not purport, nor evidently intend, to take away or add to the powers already possessed by the board of election commissioners, nor did they do so; but they did decide by said amendment to the charter that in the event of the use of voting machines the preferential system of voting, theretofore provided for in said charter, should be abandoned and that the general laws of the state should govern "the arrangement of the ballot, the counting of the votes, the canvass of returns and the determination of the result." I have no doubt the people of the municipality had power to read into their charter this alternative system

of voting, dependent upon the exercise of an administrative power already vested in their boards of election commissioners. Whatever of legislation was achieved in the way of abandoning the preferential system of voting was accomplished by the people in amending their charter and not by the board of election commissioners in the exercise of an administrative power at all times both before and since said amendment possessed by said board; namely, that of determining to make use of voting machines in municipal elections.

WASTE, J., Concurring.—I concur in the conclusion reached by the Chief Justice in the majority opinion. There are two matters which I desire, so far as I am concerned, shall be left open for decision in the future should occasion arise.

First: My present view is that the powers conferred on the board of election commissioners by article XI, chapter 1, section 1 of the charter are but administrative in character and not legislative. I am of the opinion that the purpose and effect of article II, chapter 1, section 1 of the charter was to vest the legislative power of the city and county of San Francisco in the board of supervisors. If there is a necessary and irreconcilable conflict between the two sections the provisions relating to the power of the board of election commissioners must prevail under the rule respecting conflicts between general and special provisions. In determining whether or not there is such conflict we should construe each of the provisions, if they are reasonably susceptible of such construction, so as to maintain the integrity of each of them. This may be done, I believe, by giving full effect to article II, chapter 1, section 1, vesting the legislative power of the city and county in the board of supervisors and by construing article XI, chapter 1, section 1, giving "the conduct, management and control of the registration of voters, and of the holding of elections, and of all matters pertaining to elections in . . . a Board of Election Commissioners," as conferring upon that board only such powers and discretion as are ordinarily exercised by an administrative board.

Second: In the next instance I decline to be bound by anything said in the majority opinion, either directly or

by implication, which may be construed to have a bearing upon future elections resulting from the adoption of the voting machines by the board of election commissioners on the preferential system of voting and tabulating the results provided for in the city charter. I reserve for future consideration the question of whether or not the adoption of the voting machines by the board of election commissioners works for all time a complete abandonment of the system of voting and tabulating the results of elections now in use.

Lawlor, J., concurs.